GRAND ISLAND & WYOMING CENTRAL RAILROAD COMPANY, APPELLEE, V. COUNTY OF DAWES ET AL., APPELLANTS.

FILED JUNE 5, 1901. No. 9,465.

Commissioner's opinion, Department-No. 1.

1. **Levy:** OUTSTANDING WARRANTS. When county commissioners have made a levy of nine mills for general fund purposes, they have no further power to levy an additional tax for payment of outstanding warrants previously issued against the general fund in excess of the statutory limit, unless authorized by a vote of the people of the county.

2. **Void Tax:** INJUNCTION. "Where a tax is void, that is, where there is no tax which the plaintiff is in equity bound to pay, he may invoke the aid of a court of equity to protect his rights by an injunction, notwithstanding section 144 of the revenue act. [Compiled Statutes, ch. 77, art. 1.]" *Bellevue Improvement Co. v. Village of Bellevue,* 39 Nebr., 877, and *Touzalin v. City of Omaha,* 25 Nebr., 817, followed.

APPEAL from the district court for Dawes county. Heard below before WESTOVER, J. *Affirmed.*

*W. H. Fanning, Allen G. Fisher* and *Albert W. Crites,* for appellants.

*James E. Kelby, J. W. Deweese* and *Charles F. Manderson, contra.*

DAY, C.

This is an appeal from a decree rendered by the district court of Dawes county, enjoining the appellants from collecting a certain tax of three mills on the dollar valuation, levied upon appellee's property. The facts are undisputed, and so far as we deem them necessary to an understanding of the question presented by the record are as follows: The county of Dawes, appellant, is one of the regularly organized and existing municipal sub-

divisions of the state. Appellee is a corporation owning a line of railway located in part in Dawes county. For the fiscal year of 1896 the state board of equalization, pursuant to law, assessed appellee's property in the various counties throughout the state at a certain sum per mile; the assessment so made upon the mileage in Dawes county amounting to the sum of $100,800. For the year of 1896, the county commissioners of said county made a levy upon the taxable property of the county as follows: General fund, nine mills; old outstanding warrants, three mills; bridge fund, two and seven-tenths mill; soldiers' relief fund, three-tenths mill; bonds and interest, five mills. The total levy for the year, outside that for bonds and interest, being fifteen mills. This levy upon appellee's property aggregated the sum of $4,803.81; all of which has been paid into the treasury of the county, except that portion arising out of the three-mill levy to pay "old outstanding warrants," amounting to the sum of $302.40. It is the legality of this three-mill levy which is here questioned.

The old outstanding warrants, for the payment of which the three-mill tax was levied, were all drawn upon the general fund during the years 1891 to 1896 inclusive, and the indebtedness which they were designed to cover accrued long after the adoption of the present constitution, and no vote of the people was had authorizing any levy for their payment, or the indebtedness leading to the tax. In each of the years from 1891 to 1896, inclusive, a levy of nine mills for general fund purposes had been laid. The aggregate of these outstanding warrants, with interest thereon, at the date of the stipulation of facts, amounted to the sum of $44,091.43, for the payment of which there were no funds in the treasury. For the purpose of enlightening the discussion we insert a table, based upon the facts presented by the record, taken in part from appellee's brief, showing the assessed value of property in the county for each year from 1891 to 1896, inclusive; the amount levied for general fund

purposes; the amount possible to be realized from the levy; the amount of warrant actually issued against the general fund; the amount of unpaid general fund warrants; the amount of warrants which might have been issued within the limit of 85 per cent. of the tax; and the per cent. of warrants issued to the total tax levied.

| Year. | Valuation of taxable property. | Levy for general fund purposes. | Amount realized from levy. | Warrants issued. | Outstanding warrants unpaid. | Warrants authorized 85% of tax. | Percentage of issue to total tax levied. |
|---|---|---|---|---|---|---|---|
| 1891 | $1,702,423.00 | 9 mills | $15,321.80 | $20,625.00 | $6,767.84 | $13,023.53 | 134.62% |
| 1892 | 1,729,151.00 | 9 mills | 15,562.35 | 15,451.00 | 4,250.31 | 13,227.99 | 99.28% |
| 1893 | 1,931,811.00 | 9 mills | 17,386.29 | 17,720.76 | 4,142.68 | 14,778.34 | 101.92% |
| 1894 | 2,221,426.57 | 9 mills | 19,992.83 | 16,969.36 | 6,050.89 | 16,993.90 | 84.88% |
| 1895 | 1,496,820 68 | 9 mills | 13,471.38 | 11,460.17 | 2,862.11 | 11,450.67 | 85.07% |
| 1896 | 1,499,244.00 | 9 mills | 13,493.19 | 10,560.73 | 8,497.60 | 11,469.21 | 78.26% |

It needs but a glance at the foregoing table to disclose that for the years of 1891 and 1893 warrants were issued far in excess of any ability to pay them out of the taxes to be realized from the nine-mill levy, and that during the entire period, excepting only the years 1894 and 1896, warrants were issued in excess of the limit of 85 per cent. prescribed by the statute, and in these two years, while the limit had not been exceeded, still a large amount had been issued which at the date of the stipulation remained unpaid.

Section 5 of article 9 of the constitution provides: "County authorities shall never assess taxes the aggregate of which shall exceed one and one half dollars per one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of this constitution, unless authorized by a vote of the people of the county." It is plain that this provision is not a grant of power to county authorities to levy a tax of fifteen mills on the dollar valuation; it is simply a limitation upon the power, operative alike upon the county and the legislature. The principle of the law is firmly established that counties or other municipal corporations have no inherent power in matters relating to taxation, and they can exercise only

such power as is delegated to them by the constitution or by the legislature. We have shown that such power has not been granted by the terms of the constitution; let us now examine what power has been conferred by the legislature. Section 25, article 1, chapter 18, Compiled Statutes, 1899, provides:

"It shall be the duty of the county board of each county: First. To cause to be annually levied and collected taxes authorized by law for county purposes, not exceeding one dollar and fifty cents on the one hundred dollars valuation, unless authorized by a vote of the people of the county, and in addition thereto sufficient to pay the interest, and create a sinking fund for the payment of the principal, of all indebtedness which existed at the adoption of the constitution, November 1, 1875. * * * Sixth. At their regular meeting in January of each year, to prepare an estimate of the necessary expenses of the county during the ensuing year, the total of which shall in no instance exceed the amount of taxes authorized by law to be levied during that year, including the amounts necessary to meet outstanding indebtedness as evidenced by bonds, coupons, or warrants legally issued," etc.

"Sec. 34. It shall be unlawful for the county board of any county in the state to issue any warrants for any amount exceeding the aggregate of 85 per cent of the amount levied by tax for the current year, except there be money in the treasury to the credit of the proper fund for the payment of the same; nor shall it be lawful for the county board to issue any certificate of indebtedness in any form in payment of any account or claim, nor to make any contracts for or to incur any indebtedness against the county, in excess of the tax levied for county expense during the current year, nor shall any expenditure be made or indebtedness be contracted to be paid out of any of the funds of said county in excess of the amount levied for said fund.

"Sec. 35. Each warrant shall specify the amount levied

and appropriated to the fund upon which it is drawn, and the amount already expended of such sum."

Section 77, article 1, chapter 77, Compiled Statutes, 1899, provides: "On the last day of sitting as a board of equalization the county board shall levy the necessary taxes for the current year, including all county, township, city, school district, precinct, village and other taxes required by law to be certified to the county clerk and levied by the county board; provided,  \*  \*  \*  The rate of tax for county purposes shall not exceed one dollar and fifty cents on the one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of the present constitution, unless authorized by a vote of the people of the county, and shall be as follows: 'In counties under township organization, for ordinary county revenue, including the support of the poor not more than nine mills on the dollar valuation; for roads, not more than five mills on the dollar valuation; for county bridge fund, not more than four mills on the dollar valuation; for county sinking fund, not more than four mills on the dollar valuation, and labor tax as provided in the following section. In counties not under township organization, for ordinary county revenue (including the support of the poor) not more than nine mills on the dollar valuation; for roads, not more than five mills on the dollar valuation; for county bridge fund, not more than four mills on the dollar valuation; for county sinking fund not more than three mills on the dollar valuation, and labor tax as provided in the following section.' "

It will be noted that by the terms of the statute above quoted, the county authorities are limited to a levy of nine mills for general fund purposes. This being the basis of their power to act, they must, in the exercise of it, keep within the limit granted, both as affects the amount of the levy and the purpose specified. The restriction of a levy of nine mills for general fund purposes is manifestly for the purpose of compelling the commissioners to ad-

minister the affairs of the county with economy and to prevent the municipal subdivisions of the state from becoming burdened with debts to be paid by the taxpayers. The county commissioners had the undoubted right, by virtue of the statute, to make a levy of nine mills for general fund purposes for each of the years from 1891 to 1896, and having done so, they had no further power to raise additional funds by a levy for the purpose of discharging debts properly chargeable to the general fund. If the commissioners had made a levy of twelve mills for the general fund for the year 1896, we think all would concede that the levy would be void to the extent of the excess of the amount authorized by the law for that purpose; and yet that is the effect of the levy of nine mills for general fund purposes and three mills for old outstanding warrants in the case under consideration.   If such a transaction were permitted to stand, it would be to accomplish by indirection that which the law prohibits to be done directly.   In the case before us, the general fund in the six years was entitled to a levy of fifty-four mills; by the process proposed this fund would have the benefit of a levy of fifty-seven mills.   In *Union P. R. Co. v. Buffalo County*, 9 Nebr., 449, speaking of the power of the commissioners, the court says: "They have no authority to levy taxes for any purpose unless authorized by statute." In *Bellevue Improvement Co. v. Village of Bellevue*, 39 Nebr., 876, it is said : "Where a tax is void, that is, where there is no tax which the plaintiff is in equity bound to pay, he may invoke the aid of a court of equity to protect his rights by an injunction, notwithstanding section 144 of the revenue act.   [Compiled Statutes, ch. 77, art. 1.]" *Touzalin v. City of Omaha*, 25 Nebr., 817.   In *Morris v. Merrell*, 44 Nebr., 429, the court in speaking of mere irregularities in assessment and a void assessment, says : "But the rule is otherwise where the assessments are absolutely void for want of jurisdiction or power to impose the same.   In such a case, a party may invoke the aid of a court of equity."

8

For the reasons set forth in this opinion the attempted levy of three mills to pay the outstanding warrants is illegal and unauthorized, and being so, a court of equity, in a proper case, will enjoin its collection. It is recommended, therefore, that the decree be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.