H. A. HILL, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON *et al., Appellees.*

No. 16,985.

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*Delegation of Legislative Powers—Due Process of Law—Taxation—Rock Road Law.* Chapter 201 of the Laws of 1909 "providing for the improvement of country roads," commonly known as the "rock road law," is not unconstitutional on the ground that it delegates legislative power to the petitioners, nor for the reason that the act contains no express provision for notice to the property owners before the special assessments become a tax upon their property, nor because it gives to the board of county commissioners authority to tax one-fourth of the cost of the improvement upon the township through which the road runs.

Appeal from Johnson district court; JABEZ O. RANKIN, judge. Opinion filed June 11, 1910. Affirmed.

*A. L. Berger,* and *S. D. Scott,* for the appellant.

*Fred S. Jackson,* attorney-general, *C. B. Little,* county attorney, *John T. Little, C. W. Gorsuch,* and *C. L. Randall,* for the appellees.

The opinion of the court was delivered by

PORTER, J.: In this case the validity of the "rock road law" is assailed, and the only question is whether the law is constitutional.

The board of county commissioners was about to let a contract for the construction of a public road in Johnson county when the plaintiff, who is a taxpayer in the county, owning land within the taxing district, brought this action to enjoin the proceedings. A temporary restraining order was granted. The defendants answered that they were proceeding under the authority of chapter 201 of the Laws of 1909 (Gen. Stat. 1909, §§ 7359-7369), entitled "An act providing for the improvement of country roads in the state of Kansas," approved March 6, 1909. The answer alleged that under the provisions of the act a petition was presented to the board praying for the improvement of the road; that it contained the names of more than sixty per cent of the landowners along the line of the road owning more than fifty per cent of the land to be taxed, and that it fully complied with all the provisions of the law; that afterward, at a regular meeting of the board, a resolution was adopted finding and declaring the improvement to be of public utility, and declaring that the taxing district for the payment of the improvement should include the lands lying on each side of the road within the distance set out in the petition, and further alleged that the proceedings of the board were in compliance with the provisions of the statute and with full authority. A demurrer to the answer was overruled, and the plaintiff appeals.

The act, which is commonly known as the "rock road law," provides for the improvement of country roads. The first three sections of the act are as follow:

"SECTION 1. Wherever sixty per cent of the landowners along the lines of any regularly laid out road, who shall own at least fifty per cent of the land to be taxed, within such distance as shall be stated in the

Hill v. Johnson County.

petition hereinafter referred to, or on each side thereof, or within a radius of the distance prescribed in such petition on each side of such road, from any point thereof, and between the terminal points mentioned in such petition, shall petition the board of county commissioners of the county in which such road is located for the improvement of such road, or any part thereof, said county commissioners shall cause said road or part of road thereof to be improved as prayed for in said petition and as hereafter provided; provided, however, that before such improvements as prayed for in such petition are ordered by the county commissioners they shall, by order of the board, find and declare it to be of public utility.

"SEC. 2. Such petition shall state: First, the name of the road which or any part of which is to be improved; second, the points between which said improvements are to be made; third, the kind of improvements prayed for; fourth, the number of annual assessments to be made in payment thereof, not exceeding ten.

"SEC. 3. Upon the filing of such petition the said county board shall cause an accurate survey of such road, or any part thereof, to be made by the county surveyor, or by some surveyor or engineer to be employed by them for that purpose, and a careful estimate of the cost of such improvement, with profile and specifications thereof, together with a map showing the several tracts of land within such distance as shall be stated in the petition, and cause the same to be filed in the office of the county clerk of the county."

Section 4 provides that the county commissioners shall take charge of and conduct the improvement in conformity with the specifications, and authorizes the board to make contracts for the work and to issue special-improvement bonds in payment thereof. There are provisions for letting the contracts to the lowest bidder, and for contractors' bonds for the faithful performance of the work.

Section 6 provides that when the work is completed the county commissioners shall apportion three-fourths of the cost thereof among the several tracts of land designated in the map, according to the benefits accruing to the property, and shall give credit thereon for any

damages occasioned to the property by the construction of the improvement, and that "the remaining one-fourth of such cost shall be charged to the township or townships in which such road improvements are made, which shall be raised in the manner now provided by law for raising taxes for all township purposes."

Section 7 authorizes the commissioners, whenever in their judgment any part of such road is of general importance to the county, or where unusual expense will be incurred by reason of creeks, sand, etc., to make an order that the expense of such portion of the road shall be paid out of the general fund of the county. There is a further provision that the county clerk shall enter the cost of such improvement upon the tax rolls of the county, and that the taxes shall be collected as other taxes.

The main contention is that the act is unconstitutional because it delegates legislative powers to the petitioners, first, to determine absolutely the location, extent and boundaries of the taxing district within which three-fourths of the cost of such improvement is to be raised by special assessments; second, to determine the kind, character, extent and cost of the improvement; third, to determine the time over which the special assessments are to be extended and payments made, and, fourth, to levy one-fourth of the cost of the improvement upon the townships through which the road runs without their consent.

The whole contention is based upon the doctrine of *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, where the "Buchan law" was held unconstitutional. That decision, which was by a majority of the court, turned upon the single proposition that the act under consideration provided that when a majority of resident landowners within one-half mile on either side of any regularly laid out road petitioned the board to improve a road, or any part thereof, it was thereby made the duty of the board to cause the improvement to be made.

Because of the arbitrary provision leaving to the board no discretion or supervisory control, either with respect to whether the improvement should be made or its cost, the act was held to confer legislative power upon the petitioners. It was said in the opinion, however, by way of argument, that if the statute had conferred discretion upon the board to make the improvement it might be upheld. The same principle controlled the decision in *Hutchinson v. Leimbach,* 68 Kan. 37, where an act of the legislature attempting to authorize an individual to effect a change in the boundaries of a city by a petition to the district court was held invalid for the reason that the provisions of the act left no discretion in the council or other public body or office. The doctrine of *Comm'rs of Wyandotte Co. v. Abbott,* supra, is limited by the language used in the opinion to the peculiar provisions of the act there involved. In passing upon the particular proposition which we are now considering it was said:

"If the legislature had conferred upon the board of county commissioners of Wyandotte county discretion to order the improvement, the control thereof, and the amount of expenditure therefor, the statute might be valid. (Const., art. 2, § 21.)" (Page 161.)

During the seventeen years which have passed since the Abbott case was decided there has been a steady and constant growth of sentiment everywhere in favor of the building of "good roads," and of apportioning the cost of their construction between the public and those whose property is specially benefited thereby. This sentiment has gradually crystallized into a popular demand, in response to which the legislature at its last session enacted the "rock road law." It is the duty of the court to uphold the statute unless it is apparent that it conflicts with some provision of the constitution. It is presumed to be valid. In its enactment the legislature evidently sought to avoid the defects in the Buchan law, and doubtless for that reason expressly provided

52—82 KAN.

that before the improvement prayed for should be or-
dered by the board, and before any tax could be im-
posed, the board should first make an order finding and
declaring the road to be of public utility.

The difference between the two statutes is quite ma-
terial. The earlier one, which was held to be uncon-
stitutional, left no discretion whatever in the board as
to whether the improvement should be made. If the
petition was in due form the board was required to
order the improvement made and the tax to be levied.
Under the provisions of the act of 1909, before any im-
provement can be made or any tax levied the board
must first find and declare the improvement to be of
public utility, and must adopt the boundaries of the
taxing district suggested by the petitioners. But it has
the power and discretion to adopt or reject. If in its
judgment the taxing district is not a proper one the
board can reject the proposition and refuse to find and
declare the improvement to be of public utility. The
effect of such action would require a petition to be
presented with a taxing district acceptable to the board
before any improvement could be made or tax levied.
The determining of the kind, character and extent of
the cost of the improvement, of the time when special
assessments are to be paid, and the finding and declar-
ing the work to be of public utility, are all acts of the
board. The law does not delegate to the petitioners
the power to order or direct that anything be done.
They do not arbitrarily fix or form a taxing district,
nor do they arbitrarily determine the kind, character
or extent of the improvement or the cost thereof, or the
time when the special assessments are to be paid.
These are all done by the board. Nothing that the
petitioners do can be regarded as the exercise of
legislative power. They merely initiate the proceed-
ings. Their petition may be in proper form, may, in
every respect, comply with the provisions of the act,
but, unless the board in its legislative capacity declares

that the improvement is of public utility and shall be made, no action is taken toward making the improvement or levying a tax.

This vital distinction between this act and the one involved in the Abbott case answers the objection to the present act based on the ground that it provides for taxing one-fourth of the cost of the improvement to the township through which the road runs. The power to declare what shall be the taxing district is a legislative power, exercised by the board, upon which the legislature may confer legislative powers. Section 21 of article 2 of the constitution provides that the legislature may confer upon tribunals transacting the business of the several counties such powers of local legislation and administration as it shall deem expedient. (*City of Emporia v. Smith*, 42 Kan. 433.) In *Wulf v. Kansas City*, 77 Kan. 358, the court upheld a law providing for the appointment by the mayor, in cities having a population of more than 50,000, of a board of park commissioners with power to issue bonds and levy taxes therefor. In the present case it appears from the answer that the county commissioners expressly adopted the district as defined by the petitioners.

Another objection urged is that the act contains no express provision for notice to the property owners before the special assessment becomes a tax upon the property. A complete answer to this is found in the cases of *Gilmore, County Clerk, v. Hentig*, 33 Kan. 156, and *Railroad Co. v. Abilene*, 78 Kan. 820. Every presumption is in favor of the validity of the statute, and it will not be held void merely because there is no express provision for notice to the property owner and opportunity to be heard if there is nothing in the statute which prevents such notice. In the opinion in *Railroad Co. v. Abilene*, supra, it was said:

"Provision for notice and a hearing need not be made in the statute by express words. It may be implied. In reality the courts simply read the provision

into the statute in order to uphold taxation schemes against the fourteenth amendment to the constitution of the United States, which forbids any state to deprive any person of property without due process of law. This was done in the case of *Gilmore, County Clerk, v. Hentig,* 33 Kan. 156. But the statute must be one which will allow notice and a hearing to be interpolated. If it arbitrarily fixes the steps to be taken in a manner indicating that notice and a hearing upon some subject like benefits are excluded, it must be judged accordingly." (Page 827.)

There is nothing in the act in our opinion which conflicts with the various provisions of the statutes for raising taxes 'for township purposes. Attention is called to the fact that section 1 of chapter 256 of the Laws of 1909 (Gen. Stat. 1909, § 9423) provides that township boards shall fix the levy and rate of taxation for township purposes, but shall not levy a tax to exceed three-fourths of one mill for township purposes. It is contended that this necessarily conflicts with section 6 of the present act, which provides that one-fourth of the cost of rock roads may be paid by the township, and "shall be raised in the manner now provided by law for raising taxes for all township purposes." This provision refers to the method of raising the tax for one-fourth of the cost of the improvement, and does not make the tax thus levied a tax for township purposes. It is in the nature of a general tax, and is not special in the sense that it is charged against specific property.

We conclude that the law is not invalid for any of the reasons suggested, and the judgment of the district court is therefore affirmed.