THE STATE OF KANSAS, *ex rel. Albert Faulconer, as County Attorney, etc., Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF COWLEY, *et al., Appellees.*

No. 17,920.

SYLLABUS BY THE COURT.

TAXATION — *Statutory Limit* — *"Current Expenses"* — *County Roads.* The limit of 1.12 mills for current expense fixed by section 5 of chapter 245 of the Laws of 1909 does not apply to a road levy of 1 mill under section 33 of chapter 248 of the Laws of 1911, the maintenance of a road designated a county

road under the latter act not being a part of the current expense of the county within the meaning of the previous limiting act.

Appeal from Cowley district court. Opinion filed December 9, 1911. Affirmed.

*John S. Dawson,* attorney-general, *Albert Faulconer,* county attorney, and *Hackney & Lafferty,* for the appellant.

*G. H. Buckman, S. C. Bloss, C. W. Roberts, F. L. Richardson, C. W. Wright, J. Mack Love,* and *O. P. Fuller,* for the appellees.

The opinion of the court was delivered by

WEST, J.: By section 5 of chapter 245 of the Laws of 1909, Cowley county for current expenses is limited to a levy of 1.12 mills. Pursuant to the provisions of section 33 of chapter 248 of the Laws of 1911 the county board levied 1 mill road tax in addition to the levy for current expenses. This suit was brought to enjoin the collection of this tax, and the plaintiff taxpayers assert that the levy was void and in excess of the limit fixed by section 5 of the act of 1909—in other words, that a road tax is a part of the current expense tax and is not one in addition thereto. This is the vital and pivotal question on which the case turns.

Chapter 245 of the Laws of 1909 contains 31 sections (Gen. Stat. 1909, §§ 9394-9422), the first 11 of which in express terms limit the power of the county board to levy for current expense. Section 12, however, fixes a specific limit on the power granted by section 6036 of the General Statutes of 1901 (Laws 1874, ch. 108, § 21), and reduces the limit there fixed from three mills to one mill. Section 13 reduces the limit fixed by section 6071 of the General Statutes of 1901 (Laws 1901, ch. 363, § 9) from two mills to four-tenths of a mill. The remaining sections cover other matters, including

high schools, cities and boards of education, the latter clause of section 26 providing, "and nothing in this act shall be construed to limit the levy provided by any special act heretofore passed for the construction of roads, and under which any county is now operating." It is true that section 12 was rendered inoperative by the act of 1911 by repealing section 6036 and that section 13 has reference to roads established by vote of the people in certain counties and does not apply to Cowley county. It is plain, however, that the act of 1909 is not confined to the mere limit of levy for county purposes, but in the way indicated expressly limits certain road levies and includes many other matters of taxation.

The act of 1911 (ch. 248), relates to roads and highways and repeals many former acts. It provides that certain roads may be designated by the board of county commissioners as county roads which shall as "near as practicable" connect cities and market centers whether both such cities or centers are within the county or one be within and the other without such county. All county and state roads are required to be maintained at the expense of the county, and section 18 provides that all roads designated as county roads under the provisions of chapter 198 of the Laws of 1909 (Gen. Stat. 1909, § 7328 *et seq.*), and established as such at the time of taking effect of chapter 248, shall be and remain county roads and shall be maintained under the provisions of the later act. Chapter 198 here referred to authorized the county engineer to classify certain roads as county roads. It does not appear, however, that any road was thus classified in Cowley county under that act. Section 27 of chapter 248 of the Laws of 1911 provides, among other things, that the county engineer shall have general supervision of all the county roads and bridge work in the county under the authority of the board of county commis-

sioners, and section 30 authorizes the engineer and the board of county commissioners to direct where road work shall be done on state and county roads. Section 31 authorizes the engineer, with the approval of the board, to determine what county roads shall be dragged, and to arrange for their dragging upon such terms as the board and engineer may direct. Section 32 provides that the taxes assessed for construction and maintenance of public roads and highways shall be paid in cash and collected as provided for in relation to other taxes, and that the treasurer shall pay the proportion to be used upon township roads or city streets to the treasurer of the township or the city from which such taxes are collected. Section 33 provides that the county commissioners may, at the time prescribed for levying county taxes, "levy a road tax for county and state roads and bridges of not more than one mill on the dollar on all taxable property in their respective counties and the same shall be collected as are other taxes, and when collected shall be expended upon the building, repairing, maintenance and improvement of the state and county roads of such county by and under the direction of the county commissioners and the approval of the county engineer; provided, that if a majority of the electors voting at an election called for that purpose in such county shall vote to increase the tax levy herein, such board of county commissioners shall levy a tax for road purposes not to exceed three mills for such road purposes; provided, that the boards of county commissioners shall, within the limit prescribed of one mill on the dollar, keep all state and county roads within their respective counties in first-class condition."

Section 53 is that no provision of the act shall be construed to repeal or supersede any special act now in force in any county. An inspection of this statute carries the conviction that it is a new departure as to the matter of roads and highways and changes the old

system of county roads at the expense of the local municipalities to one by which certain roads, designated by the county board as state or county roads, are to be maintained at the expense of the county, a condition which did not exist previously to the enactment of this statute. Manifestly one object sought to be accomplished is the betterment of roads leading across counties, which may apparently be designated and provided for by the board, one at a time, as in this case, or more than one at a time, in the discretion of the county commissioners. In a county of the size and importance of Cowley, if the levy for current expense of 1.12 mills may, as claimed by the plaintiffs, rightfully include one mill for road purposes, then for all other general expenses of the county .12 of a mill would be the limit, and we hesitate to impute to the legislature a design thus to restrict the levy for current expense in such a county. On the other hand, it is plain that the levy for county road purposes can not, without a vote of the people, exceed one mill, whether one road or many roads are to be maintained at the county's expense.

It is true, as suggested by plaintiffs, that certain other acts of 1911 expressly provide that the taxes therein mentioned may be levied in addition to those already authorized by law, but we can not concede that therefore it was the intention of chapter 248 to include the maintenance of state and county roads within the current expense of the county or that the failure to express the intention that the road levy should be in addition thereto is controlling in view of the general scheme of the act. It is suggested that repeals by implication are not favored, and this is true; but a later enactment giving express authority to levy for a given purpose does not repeal by implication a former enactment fixing a limit unless it appears clearly that the purpose in each act is the same in scope and character; and in order for this rule to be applicable it must be made to appear that the road levy provided by chapter

248 of the Laws of 1911 is circumscribed within the same limits as "current expense" contained in the act of 1909. In *The State, ex rel., v. Comm'rs of Marion Co.*, 21 Kan. 419, it was held that current expenses "include such charges and expenses as are incidental in conducting the business of the county government for the current year" (p. 434), and that a tax to build county buildings does not come under that phrase. In *Comm'rs of Osborne Co. v. Blake,* 25 Kan. 356, it was held that a tax levied to pay a judgment against a county was a part of the current expense because the statute provided that such tax should be collected "as other county charges." (p. 358.) In *A. T. & S. F. Rld. Co. v. Wilhelm, Treas.,* 33 Kan. 206, 6 Pac. 273, a tax levied for the support of the poor was held to be a current expense of the county, the court saying:

"Therefore, in our opinion, the 'poor-fund' is simply one of the items which the county board takes into consideration in levying a tax for county expenses, or for current expenses." (p. 209.)

It was also said that " 'the poor always ye have with you' " (p. 209), and that the expense for the support of the poor is an expense to be figured every year—in other words an expense of the current year, and that the statute permitting such levy was adopted in 1862. While the analogy of this opinion is at first blush strong, still a moment's reflection will show that there the usual and habitual burden and expense were under consideration, while here a new and previously unknown burden and expense upon the county were provided for two years after the enactment of the statute limiting the levy for current expense. The very fact that the amount expressly authorized for this purpose was almost equal to the amount authorized for current expense under the limiting statute previously enacted is significant. Suppose it be conceded that a road tax is a part of the county current expense, and suppose the levy authorized had been 1.12 mills instead of one

The State, *ex. rel.*, v. Cowley County.

mill. We would then have this strange situation: the most the board could levy for current expense, including roads, would be 1.12 mills, but it might levy this rate for roads alone under an act which requires that when collected it shall be expended "upon the building, repairing, maintenance and improvement of the state and county roads" (Laws 1911, ch. 248, § 33), thereby leaving nothing at all for all other current expenses. Plaintiffs also cite *A. T. & S. F. Rld. Co. v. Comm'rs of Atchison Co.,* 47 Kan. 722, 28 Pac. 999, which held that a levy of a one-mill tax for building county bridges, the cost of which was payable out of the current revenue fund, was void where the limit for county expenses had already been reached, but there the statute expressly provided that the expense of building a bridge costing less than $200 should be paid out of the money in the treasury for county expenses, and if costing more than $200 it could not be built at all without a vote of the people, hence the decision sheds no light on the question at issue. *A. T. & S. F. Rld. Co. v. Woodcock, Treasurer,* 18 Kan. 20, is also referred to. It was there held that the county board, having levied up to the limit for current expense, could not levy above the limit to meet a deficiency of previous current expense, and such levy being void it could not be validated by a curative act. *Howard v. Hulbert,* 63 Kan. 793, 66 Pac. 1041, referred to by plaintiffs, holds that a special act permitting a given county to levy five and one-half mills for current expenses is repealed by a general act forbidding the commissioners of any county to levy more than five mills, the rule there being cited "'that where two statutes are in any respect, in both language and meaning, irreconcilably repugnant, the provisions of the statute last enacted repeal those of the former, with which they conflict.'" (p. 798.)

*Stewart v. Town Co.,* 50 Kan. 553, 32 Pac. 121, involved a levy by a city of the second class. The statute authorized but ten mills for general revenue purposes,

and it was decided that such purposes included expenses for water, electric light and fire department. The levy, including these, having exceeded ten mills, was held void as to the excess. It was further held that the statute fixing a limit of forty mills for all purposes except school taxes vested no power to levy, and that the express authority to levy ten mills for general purposes precluded the levy of a greater rate. It was said that "supplies of water, light and for the fire department are among the daily necessities of the city, and naturally fall within the class of expenses which are to be paid out of the general revenue fund." (p. 558.) We think this could not be said of a road designated a county road under the act of 1911, or that the expense of its maintenance could be held to have been intended by the limiting act of 1909, two years in advance of a law providing for such road and such expense.

Our attention is called to sections 643 and 655 of the General Statutes of 1909 and chapter 70 of the Laws of 1911. Section 643 was enacted in 1867 (Laws 1867, ch. 35, § 1), and provided that the commissioners should determine what bridges should be built and repaired at the expense of the county and what by the road district. Section 655 was enacted in 1879 (Laws 1879, ch. 76, § 2) and amended in 1909 (Laws 1909, ch. 63, § 1), and authorized the board to make an appropriation, not exceeding $4000, for the building or repairing of bridges, but that not more than 20 per cent of the tax levy for general purposes should be used therefor, and providing for a vote of the people when it exceeded this sum. Chapter 70 referred to simply amends section 643 by adding thereto a provision touching counties having a population of less than 10,000, and authorizes the board in such counties to pay for bridges out of the county expense fund. This section as amended still remains a part of the same act referred to in *A. T. & S. F. Rld. Co. v. Comm'rs of Atchison Co.,* 47 Kan. 722, 28 Pac. 999, already referred to. It is

urged that a bridge is of necessity a part of a road and that this legislative authority to build certain bridges out of the general expense fund is an indication that a similar legislative intention exists as to roads. But, while in a certain sense a bridge is a part of a road, it is still true that the legislature has in various acts made provision for bridges entirely separate from the roads of which they formed parts. Chapter 145 of the Laws of 1911 empowers boards and counties having an assessed valuation of more than $40,000,000 and less than $50,000,000 to create a county fund to be used in the erection and building of county bridges, which fund is to be used for no other purpose whatever. Chapter 71 of the Laws of 1911 authorizes the boards in counties of not less than 39,000 nor more than 45,000 population containing a city of certain class and population to levy a bridge fund in addition to all levies now authorized by law. If bridges are to be regarded as portions of highways, then these enactments would seem to indicate no intention to confine the cost of highways to the current expense fund. The decisions cited from other states will be briefly noticed.

State *ex rel.* v. *Railroad*, 145 Mo. 596, 47 S. W. 500, involved a levy for road taxes in a Missouri county, and the court held that taxes levied for road purposes were county taxes and so recognized by the constitution, and the limit therefor could not be increased by a pretended township levy for the same purpose. In *Webster v. Fish*, 5 Nev. 190, it was held that under the act there in question the construction and repair of public roads and bridges might properly be considered such a county expenditure as could properly be met by moneys in the general fund. There the statute appears to have authorized the board to apportion all moneys coming into the treasury into special funds, two-thirds of which should go into the general county fund. It was held that this fund, though nowhere defined by the law of Nevada,

might properly be used for the construction and repair of public roads and bridges. In *Frederick v. Northern. Alabama Railway Co.*, 130 Ala. 407, 30 South. 426, it was. decided by the supreme court of Alabama that, the constitution having limited the levy for county purposes, the commissioners could not add a sum for working the public roads under a statute providing therefor. The constitution limited the entire levy for the year to five mills, except when authorized by law to pay a debt for certain purposes, and it was held that by a spcial act the legislature could not authorize this amount to be exceeded. In *State ex rel. v. Wabash Ry. Co.*, 169 Mo. 563, 70 S. W. 132, the supreme court of Missouri held that under the constitution limiting the rate of taxation to 40 cents on the $100, and permitting a larger tax for certain purposes on assent of two-thirds of the voters, the legislature could not authorize the circuit court to empower the board to increase this levy. In none of these cases do we find any extended discussion or decision as to the meaning of the phrase "current expenses" or any similar expression. Other decisions are cited, and we find that most of them go simply to the extent of holding that a constitutional or statutory limit can not be exceeded. Three, however, will be referred to. *Grand Island & W. C. R. Co. v. Dawes County*, 62 Neb. 44, 86. N. W. 934, involved a statute of Nebraska which authorized a levy of nine mills for general fund purposes. This the board levied, and then added a levy to meet outstanding indebtedness, which was held to be in excess of its power. This was substantially what was. decided in *Osborne County v. Blake*, 25 Kan. 356. *Railway Company v. Pennington County*, 20 S. Dak. 270, 105 N. W. 929, decided that a statute of South Dakota,. providing for a levy to be so manipulated as to evade the legislation and payment of the county's bonded debt,. was void because it impaired the obligation of its contract. There a separate levy of six mills for general county purposes and support of the poor was author-

ized, also a levy of two mills for county roads, and no question like the one now under consideration was considered or decided.    However, in *Combs, &c., v. Letcher County, &c.,* 107 Ky. 379, 54 S. W. 177, the court of appeals of Kentucky held that a statute authorizing a levy for "current and necessary expenses" (p. 381) was not violated by a levy to accumulate a fund with which to pay for a courthouse when erected in future, the same statute authorizing "a comfortable and convenient place for holding court at the county seat" (p. 381), in view of a later act which authorized a levy "to erect and keep in repair necessary public buildings, secure a sufficient jail and a comfortable and convenient place for holding court at the county seat." (p. 381). There was no limit in the constitution except that each county should live within its income and create no indebtedness in any year beyond its income; unless authorized by a vote of the people.    It was said that the creation of a courthouse fund by levies was, within lawful limits, a "necessary expense" within the meaning of the former act—a doctrine which has not been followed in this state.

It was urged in *Hill v. Johnson County*, 82 Kan. 813, 109 Pac. 163, that the limitation of three-fourths of a mill for township purposes was violated by a provision of the rock road law (Laws 1909, ch. 201, §§ 1-11, Gen. Stat. 1909, §§ 7359-7369) that one-fourth of the cost might be paid by the township and "raised in the manner now provided by law for raising taxes for all township purposes."    But Mr. Justice Porter said:

"This provision refers to the method of raising the tax for one-fourth of the cost of the improvement, and does not make the tax thus levied a tax for township purposes."    (p. 820.)

Likewise it may be said that a tax for the maintenance of the new creation known as county roads is not for current expense.

After a careful examination of the statutes involved,

we have no hesitation in holding that the intention of the legislature in enacting chapter 248 of the Laws of 1911 was that a tax for roads designated county roads might be provided for by the board in addition to the tax for current expenses, that such road tax was not deemed a current expense, and that the levy was, therefore, valid.

The order sustaining the demurrer to the second amended petition is affirmed.