Railway Co. v. Cloud County.

No. 21,280.

THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLOUD, and FLORENCE M. HARDESTY, as County Treasurer, etc., *Appellees.*

JACOB M. DICKINSON, as Receiver of THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLOUD, and FLORENCE M. HARDESTY, as County Treasurer, etc., *Appellees.*

THE UNION PACIFIC RAILROAD COMPANY, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLOUD, and FLORENCE M. HARDESTY, as County Treasurer, etc., *Appellees.*

SYLLABUS BY THE COURT.

TAXATION—*Levy for Building and Repairing Bridges—Statutes Construed—Levy Authorized.* Chapter 68 of the Laws of 1911 superseded section 11354 of the General Statutes of 1915, as to the levy of taxes for building and repairing bridges, and authorized a levy in addition to the amount permitted for current expenses.

Appeal from Cloud district court; JOHN C. HOGIN, judge. Opinion filed March 8, 1919. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, for appellant The Atchison, Topeka & Santa Fe Railway Company; *Paul E. Walker, Luther Burns,* both of Topeka, for appellant The Chicago, Rock Island & Pacific Railway Company; *R. W. Blair,* and *T. M. Lillard,* both of Topeka, for appellant The Union Pacific Railroad Company.

*M. V. B. Van De Mark,* of Concordia, for the appellees.

The opinion of the court was delivered by

WEST, J.: This case involves the question whether chapter 68 of the Laws of 1911 authorized any levy for the year 1915 in excess of the limitation in section 9397 of the General Statutes of 1909, which in Cloud county was 1.31 mills for general county purposes. The trial court held the levy valid, and the plaintiffs appeal.

Chapter 76 of the Laws of 1879 provided, among other things, that whenever the board of county commissioners of any county having a population of more than twenty thousand should determine that any bridge was necessary to be built, purchased, or repaired, at a cost of over two thousand dollars, it should, before making any appropriation therefor, submit the question to the qualified voters at any general election, and that when the sum appropriated should exceed five thousand dollars, the commissioners might provide for its payment in orders on the county treasury, payable in such sums and at such times, not exceeding three years from the completion of the building, purchase or repair of such bridge or bridges as they might agree upon in the contract, and they were required to levy a tax sufficient to pay such orders as they should become due. It was provided:

"That not more than two mills on the dollar of the taxable property raised for general county revenue shall be expended for repairs of bridges, unless authorized by a vote at some special or general election."

Chapter 63 of the Laws of 1909 amended and repealed this statute, and provided that whenever the board of county commissioners of any county should determine that any bridges should be built or repaired, it might, "in accordance with the statutes of this state, make an appropriation therefor, not to exceed the sum of four thousand dollars for each of said bridges; provided, however, that not more than twenty per cent of the tax levy for general purposes in any year shall be used for the building or repairing of bridges." When the cost exceeded five thousand dollars, the board might provide for orders on the county treasury, not to run longer than three years from the completion of the building or repair of such bridge or bridges, and the board was required to levy a sufficient tax to pay them as they should become due.

Chapter 68 of the Laws of 1911 amended and repealed this act of 1909, and provided that whenever the board of county commissioners of any county should determine that any bridge or bridges were necessary to be built or repaired, it might, in accordance with the statutes of this state, make an appropriation therefor, not to exceed the sum of five thousand dollars for each of such bridges. If it exceeded such sum, the board, before making any appropriation therefor, was required to

submit the question to the qualified voters; provided, that in counties of certain assessed valuation, certain amounts could be appropriated without submitting the matter to a vote, provided notice of the resolution making such appropriation, setting out the full text thereof, should be published once in the official county paper; and provided further, that if within thirty days thereafter a petition signed by ten per cent of the legal voters should be presented to the board requesting that the question be submitted to the people, an election should be ordered. When the sum to be appropriated should exceed five thousand dollars, the board could provide for its payment by orders on the county treasurer, not to run longer than three years from the completion of the building or repairing of such bridge or bridges, and the board was required to levy a sufficient tax to pay such orders as they should become due.

It is agreed that the board made the contract and appropriation in excess of five thousand dollars, for bridge purposes, and made provision for payment by a one-half mill levy, in addition to the 1.31 mills levy allowed for general county revenue purposes, and that the only question for determination is whether chapter 68 of the Laws of 1911 authorizes any levy in excess of the limit provided in section 9397 of the General Statutes of 1909, which is section 11354 of the General Statutes of 1915. The act of 1911, which was repealed by chapter 80 of the Laws of 1917, makes no mention of the general revenue fund, differing in this respect from both of the former statutes.

It is argued that in a number of cited cases it has been held that authority to make special levies does not warrant exceeding the general statutory limit. In *Comm'rs of Osborne v. Blake,* 25 Kan. 356, a judgment rendered on county warrants issued to pay current expenses was held to be in that category, and it was held that an excess tax could not be levied to pay such judgment. The case of *Bartlett, Treas., v. A. T. & S. F. Rld. Co.,* 32 Kan. 134, 4 Pac. 178, had nothing to do with bridges. Taxes for support of the poor were held to be current expenses in *A. T. & S. F. Rld. Co. v. Wilhelm, Treas.,* 33 Kan. 206, 6 Pac. 273, no reference being made to bridges. In *A. T. & S. F. Rld. Co. v. Comm'rs of Atchison Co.,* 47 Kan. 722, 28 Pac. 999, the statute under which the levy was made required payment from the current expense fund, if less than two

thousand dollars, and it was said that the cost of the bridge was not stated. *Stewart v. Town Co.*, 50 Kan. 553, 32 Pac. 121, involved water, electric light and supplies for a city, but no bridges. *Railway Co. v. City of Humboldt*, 87 Kan. 1, 123 Pac. 727, concerned only a city's floating indebtedness. The other case, *Railway Co. v. City of Topeka*, 95 Kan. 747, 149 Pac. 697, had to do only with a certain city "reserve fund."

It was held in *The State, ex rel., v. Comm'rs of Marion Co.*, 21 Kan. 419, that a tax to build county buildings does not come under the phrase "current expenses."

Without reference to the general revenue fund, the defendant board was commanded to make a levy sufficient to pay for the work contracted for, as the installments should come due. It was agreed that the assessed valuation was $36,059,144. The full amount permitted for general revenue, at 1.31 mills, would be $47,237.47. A half mill additional levy would bring $18,029.57. These figures of themselves demonstrate that the legislature did not intend to require so great a paradox and absurdity as the payment of $65,267.05 with $47,237.47. Neither can it fairly be said that, in the situation presented, the expenditure contracted and intended was part of the current expense of the county: rather, it was a special and extraordinary obligation, for which direct and plain authority was given to levy a sufficient tax. True, the words "appropriate" and "appropriation" were inaptly used, but even so, the duty to levy was made clear. In the three successive statutes covering the question of building and repairing county bridges, the first two made mention of the general revenue fund in ways which made the silence of the last very significant, as indicating the legislative intention. The first of these forbade the use of more than two mills on the dollar of that fund for repairing bridges, unless authorized by vote. The second prohibited the use of more than twenty per cent, for building or repairing bridges. The last made no restrictions as to that fund, but directed the tax to be levied without naming the fund. The language used in the first two plainly implies that, save for the restriction, the expense would come out of the general revenue fund.

The last enactment clearly requires a levy sufficient to pay the installments as they should become due, and it is held to supersede the general limit of levy for current expenses.

The judgment is affirmed.

WEST, J. (dissenting) : It is said in the brief of the defendants that the act permitted the appropriation of $15,000. If this sum had been appropriated and divided into three annual installments of $5,000 each, it would not mean a serious diminution of the general revenue fund of $47,237.47. In *Stewart v. Town Co.,* 50 Kan. 553, 32 Pac. 121, it was held that the city of Argentine was limited to the levy of ten mills for general revenue fund and had no authority to levy a tax in excess thereof for water, electric light and fire-department supplies. It was said in the opinion that the power to levy taxes must be expressly granted, and that there was no inconsistency between ten mills for general purposes, and forty mills for general purposes exclusive of school taxes.

"The first is a limitation upon the levy to meet the current and ordinary expenses. . . . The limitation of § 40 [prescribing a limit of 4 per cent] not only covers this levy, but all other levies of city taxes for general purposes, exclusive of school taxes." (p. 558.)

In *Railway Co. v. City of Humboldt,* 87 Kan. 1, 123 Pac. 727, holding that the limit for general revenue purposes should not be exceeded by giving the tax another name, it was said:

"It is not enough that the aggregate of the levies do not exceed this limitation, but none of the constituent levies can exceed the limit which applies to the particular class to which it belongs. So far as appears, the outstanding warrants for which the eight-mill levy was made are in part payable out of the general revenue fund. It is necessary, therefore, that the taxes imposed for this purpose shall not exceed the ten-mill limit applicable to ordinary current expenses and that it and the other legal levies for city taxes shall not exceed the four-per-cent limit." (p. 3.)

In *Railway Co. v. City of Topeka,* 95 Kan. 747, 149 Pac. 697, an act authorizing the city to include in its levy a reserve fund not to exceed $25,000, to be used only in case of extraordinary emergency, was held to be governed by the general limitation touching the general revenue fund.

The continued use of the word "appropriation" in the three statutes covering the question of building and repairing bridges, while not controlling, is indicative of an intention to authorize the setting apart of a portion of the general revenue fund. In the case of *Felton v. Hamilton County,* 97 Fed. 823, it was held that an act to "make appropriations of money" for the purpose of providing a county exhibit meant that such appropriation should be made out of the fund arising from

taxes assessed for general county purposes.  "Appropriate" means to set apart (1 Words & Phrases Judicially Defined, pp. 466-471), and setting apart implies something existing which can be thus disposed of.

The general and correct rule is that express authority must be shown for the levy of taxes, and that when the limit has been fixed by the legislature, no excess will be permitted, unless express authority therefor be shown.  When the act of 1879, prohibiting more than a certain part of the current expense fund to be used for repairing bridges, was superseded by the act of 1909, limiting the amount of that fund to be used for building and repairing bridges to twenty per cent, it seems plain enough that such expenses were intended to be paid from the general revenue fund.  When the act of 1911 took away this limitation and left in force the general statutory limitation, is it not entirely illogical to contend that to meet installments for which taxes were to be levied it was intended to exceed the general limitation?  Taking away the limit of twenty per cent cannot well be urged as authority for removing the limit of one hundred per cent.

The board in making this levy was confronted with the limitation of 1.31 mills for general revenue purposes and with the direction to provide for the yearly installments for bridge expenses.  There was, and is, no inconsistency between these two requirements, and in exceeding the former the board acted without authority.

MARSHALL and DAWSON, JJ., join in the dissent.