## ST. LOUIS-S. F. RY. CO. v. SMITH, County Treas.

No. 18145.　Opinion Filed May 29, 1928.

Rehearing Denied Sept. 11, 1928.

(Syllabus.)

1. Counties—Use of Tax Levy and Certain Sinking Fund for Courthouse and Jail Purposes—Statutes Harmonized.

Section 8587, C. O. S. 1921, providing that the board of county commissioners may use that part of the sinking fund of the county derived from penalties, interest, or forfeitures, and in addition thereto may use the amount of tax levied for that purpose under existing laws for erecting, repairing, or making additions to county courthouses or county jails, does not repeal or conflict with the provisions of section 5813, C. O. S. 1921, but is an additional method for raising funds for that purpose.

2. Same—Limitation on Tax Levy—Proceeds from Levy not Part of Current Expense Fund.

The funds raised by such levy do not become a portion of the current expense funds of the county, but that part of the act providing that such levy, when added to other taxes levied shall not exceed the constitutional limit for current expenses, is merely a limitation beyond which the taxing authorities are not permitted to go.

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by St. Louis-San Francisco Railway Company against A. C. Lock, now Rotha Smith, County Treasurer of Jackson County. Judgment for defendant, and plaintiff appeals. Affirmed.

E. T. Miller and Stuart, Cruce & Franklin, for plaintiff in error.

L. B. Yates, for defendant in error.

PHELPS, J. For the year 1923, the excise board of Jackson county made a levy of 1.25 mills for the purpose of constructing a new jail. Plaintiff in error paid its proportion of such tax under protest and filed suit in the district court to recover the same, alleging that this levy was illegal and void, and from an adverse judgment it prosecutes this appeal, presenting as error the sole question that the trial court erred in holding the levy valid.

Section 8587, C. O. S. 1921, provides that:

"The board of county commissioners of any county may use for the purpose of erecting or repairing a county courthouse or county jail, or either of them, or for making additions thereto or purchasing sites therefor, all or any portion of the sinking fund of the county derived from penalties, interest, or forfeitures accrued or to accrue as penalties on delinquent taxes, and in addition thereto may use the amount of tax levied for that purpose in any year under existing laws, which tax when added to the other taxes levied may equal but not exceed the constitutional limit of eight mills. * * *"

This section further provides that before proceeding to make the levy notice must be published for 30 days, giving all parties an opportunity to protest.

The cause was tried upon a stipulation of facts, and it is agreed that the notice as provided by this section of the statute was given; that $4,000 was appropriated from the sinking fund of the county derived from penalties, interest, and forfeitures, and the balance of the cost of the jail, amounting to something over $15,000, was raised by the levy here complained of. It is also agreed that the levy complained of, when added to other taxes levied, did not exceed the six-mill levy allowed said county for current expenses under the provisions of section 9692, C. O. S. 1921.

Section 5813, C. O. S. 1921, provides that:

"The board of county commissioners is authorized to provide for the construction or repairing of courthouses, jails, other necessary buildings, and make contracts on behalf of the county for building or repairing the same; and for the purpose of providing a fund for the payment of the cost of the same such board of county commissioners is hereby authorized and empowered to provide for the levy of a tax and to continue such provision from year to year for a period not exceeding five years: Provided, that such levy for such purpose, together with the levies for all other purposes, shall not exceed the amount authorized by law;

and provided, further, that the money raised by such levy shall constitute a separate and distinct fund from all others in the hands of the county treasurer until the obligation assumed by the board of county commissioners under authority of this section shall have been discharged; and provided, further, that no levy of taxes for the purpose of this section shall be made until after a majority of the legally qualified voters of said county, voting upon said proposition, shall have voted in favor of the expenditures whose payment is to be provided for by said levy or levies of taxes, at a general election at which said proposition shall be submitted, or at a special election called for the purpose of voting upon said proposition. * * *"

It is the contention of counsel for plaintiff that this section of the statute is the one under which the board of county commissioners should have proceeded, and in their briefs they ask two questions, the first of which is, Could the county commissioners make a levy under section 5813 without submitting the question of the levy to a vote of the taxpayers? and, second, if the county commissioners assumed to act under section 8587, C. O. S. 1921, is there any authority contained in that section authorizing the making of a levy against the taxpayers for the purpose of building the jail?

They contend that, since section 8587 does not specifically and in so many words provide that a levy may be made for the purpose of erecting or repairing courthouses and jails, but merely provides that in addition to that part of the sinking fund derived from penalties, interest, and forfeitures, the county "may use the amount of tax levied for that purpose in any year under existing laws, which tax when added to the other taxes levied may equal but not exceed the constitutional limit of eight mills," that the only method by which the levy could be made is provided in section 5813, that is, by submitting the question to a vote of the people. In support of this contention they cite State of Kansas v. County of Marian, 21 Kan. 308, and National Bank v. Barber, 24 Kan. 382, holding that taxes levied for current expenses cannot be used to make permanent improvements for the county, and Oklahoma News Co. v. Ryan, 101 Okla. 151, 224 Pac. 969, holding that a valid levy cannot be made unless there is a statute authorizing it. Counsel also cite State v. Board of County Commissioners (Kan.) 119 Pac. 327, and A., T. & S. F. Ry. Co. v. Board of County Commissioners (Kan.) 179 Pac. 376, holding that levies for the maintenance of highways and the build-

ing and repairing of bridges cannot be made from funds levied for "current expenses of the county."

There is no contention on the part of defendant that any effort or attempt was made to raise money to build this jail under the provision of section 5813, but it is the contention of counsel for defendant that ample authority for the levy is found in section 8587. Section 5813 comes down to us from the 1903 territorial Legislature, while section 8587 was enacted by the 1919 state Legislature, and the question that addresses itself to our minds is, if it were not the intention of the 1919 Legislature to empower the taxing authorities to make a levy for the purpose of building or repairing courthouses or jails, why was this legislation enacted? It nowhere appears to have been intended as a repeal of the old territorial statute now appearing in our Compiled Statutes of 1921 as section 5813, and we are driven to the conclusion that it was the intention of the 1919 Legislature to provide another method to meet emergencies and obviate the necessity of complying with the Act of the 1903 territorial Legislature, brought down and embodied in our Compiled Statutes as section 5813.

As we view it, the later act empowered the taxing authorities to not only use that part of the sinking fund derived from penalties, interest and forfeitures for the purpose of building or repairing courthouses and jails, but also empowered them to make an additional levy for that purpose, placing upon them the restriction that such levy "when added to the other taxes levied should not exceed the constitutional limit of eight mills." The fact that the act provides that such levy, when added to the taxes already levied, shall not exceed the constitutional limit for current expenses, does not bring such levy within the designation of "current expenses," but is, rather, the method chosen by the legislators to mark the boundaries and fix the limitations beyond which the taxing authorities may not go. This view is justified by the subsequent acts of the Legislature in amending this provision of the statute. The 1925 Legislature amended this act by specifically providing for the levy of a tax not to exceed one mill in any one year for the purpose of erecting or rebuilding county courthouses or superior court buildings.

Under this view of the case, the judgment of the district court must be, and is hereby, affirmed.

BRANSON, C. J., MASON, V. C. J., and

HARRISON, LESTER, HUNT, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 36 Cyc. p. 1074. (2) 15 C. J. p. 636, §349.