V. W. PARKER, *as Treasurer, &c.*, v. W. L. CHALLISS.

1. SIDEWALKS; *Power of Cities.* A city of the second class has power to stipulate in one contract for making sidewalks on several streets, and to assess the cost thereof upon the different lots fronting on such sidewalks, according to the front foot thereof.

2. IMPROVEMENTS; *Order of making.* Such a city has power to make a sidewalk on a street before it is graded. The city is not restricted as to the order in which needed improvements shall be made. The necessities of business, and the convenience of travel, may require that one street be macadamized or paved first, and that another be sidewalked first; and the discretion in this respect is properly vested in the mayor and council.

3. COLLECTION OF TAXES; *Irregularities; Injunction.* Mere irregularities in the proceedings to collect the assessments cannot be inquired into on injunction.

*Error from Atchison District Court.*

CHALLISS brought his action against *Parker, as Treasurer of the County of Atchison,* to enjoin the collection of special assessments of $11.40 each on seven different lots levied by the city council of the city of Atchison by ordinance as the cost of constructing a sidewalk in front of said lots. A temporary injunction was granted. The action was tried at the March Term 1871. The court made special findings of fact, from which it appears, that in January and February 1869 the city council of the city of Atchison by ordinance "required the owners of lots on seventeen different streets, in different parts

of the city, to build sidewalks, designating in said ordinances the points or places from and to which said sidewalks were required to be built, and also the kind and quality of sidewalks to be built, and providing further that if said sidewalks were not built within thirty days then the city would proceed to have said sidewalks built and make special assessments on the lots or pieces of ground for the cost of building the same; that at said time there was no sidewalk in front of plaintiff's said lots, and said ordinance No. 383 required the building of a sidewalk in front of three blocks on the south side of Kansas avenue, from Eighth to Eleventh streets, in one of which blocks plaintiff's seven lots were situated, said lots all fronting on said Kansas avenue; that on July 12th 1869 a large portion of said sidewalks not having been constructed as required by said ordinance, the city council directed the city engineer to make an estimate showing the cost of building said sidewalks in front of each and every lot where the same had been ordered to be built, but remained undone;" that said estimate was duly made and submitted, and included the estimated cost of building the sidewalk in front of each of plaintiff's said lots; that on the submission of said estimate of the city engineer the city council duly advertised for bids for the building of all said sidewalks, including the said sidewalk along plaintiff's said lots, and on the 4th of August, 1869, said city duly entered into a written contract with R. Clark & Co. to build all of said sidewalks, being on twelve different streets in said city, and including said sidewalk in front of plaintiff's lots, and to furnish all materials therefor and build and complete said sidewalks under the direction and to the acceptance of the city engineer, on or before October 1st 1869 at the price of 28½ cents per lineal foot," etc.; that said sidewalks were constructed in accordance with said contract, and were duly accepted, etc.; and "that the city council on the 11th of August passed an ordinance levying special assessments upon said lots, stating therein the fronting of each lot in said sidewalk, the cost per foot, and the total cost on each lot, a copy of which ordinance was certified and duly filed

with the county clerk on the 15th of August 1869, and the county clerk placed said assessment on the tax-roll against said lots respectively, in a separate column, to be collected as other taxes," etc.; "that Kansas avenue is a regular street of said city, which has long been open to public use, and is daily used for public travel, but the same has never been graded at or near the plaintiff's said lots, but the ground was and is an easy grade, and the sidewalk nearly even with the ground; that when said sidewalks were built some of the streets upon which they were built had never been graded or opened to public travel, and portions of such walks by reason of the uneven condition of the streets were necessarily built on posts, in some cases, five feet high, and in some cases the walks were built over running streams of water, on streets not otherwise bridged, at an elevation of five feet, in some places more; and in many places said walks were built on even ground or nearly so; and that at the commencement of this suit the defendant as county treasurer had advertised plaintiff's said lots for sale for said sidewalk assessments, and threatened to sell the same as stated in plaintiff's petition." And thereupon the district court found as a conclusion of law "that the City of Atchison had no authority to make assessments for building said sidewalks on said various streets upon all the lots on said streets fronting on said sidewalks, the power existing only to assess lots on each street for the sidewalk only built thereon," and said court gave judgment that the injunction theretofore granted be continued and made perpetual. The defendant, *Parker*, excepted; and a new trial being refused, he brings the case here on error:

*D. Martin*, for plaintiff in error :

1. The preliminary injunction should have been dissolved, and not made perpetual on the final hearing. The record shows that the defendant below was only a nominal party, and that the city of Atchison was the party really affected by the injunction. A court of equity will not act until all persons to be directly affected by the decree are brought before

at. 2 Story's Eq., § 1526. This question has been settled by this court in the case of *The State v. Anderson*, 5 Kas., 90.

2. The plaintiff below was not in a position entitling him to the interposition of a court of equity. He was legally notified by the city of Atchison to build a sidewalk in front of his lots. This he neglected to do. He might have built it at any time before the contractors commenced to build the same, but he asked the city to build it, by refusing to build it himself, and it now remains a permanent improvement of said property.

A court of equity will not permit a party to take advantage of his own wrong. Neither can one have a remedy by injunction after waiting silently until the granting of the relief asked would work an injury to the opposite party, or person in interest. 10 Cush., 252; 6 Ohio St., 119; 2 Story's Eq., § 959. If the plaintiff below had any just cause of complaint he should have enjoined the levy, which was made only seven days after entering into the contract with Clark & Co., and before much work could have been done.

3. But the assessments upon the lots of plaintiff below were made in strict conformity with law. The city of Atchison was authorized by law to pass ordinances providing for the erection of sidewalks, and for levying assessments on all lots and pieces of ground abutting on the improvement according to the front foot thereof, for the purpose of paying for the same. Gen. Stat., 160, subdivision 2 of § 30. The building of several different sidewalks, including that of plaintiff below, was required by ordinances, and the whole proceeding was strictly in accordance with law: Gen. Stat., 169, § 31. The work was contracted for at a lower price than the estimate of the city engineer; the ordinance levying the assessment was specific in its terms and imposed the burden upon each lot according to its frontage as required by law, and the sidewalks were built according to contract.

But the court ruled that "the city of Atchison had no authority to make assessments for building said sidewalks on said various streets upon all the lots on said streets fronting

on said sidewalks, the power existing only to assess lots on each street for the sidewalk only built thereon." If the court meant to assert that sidewalks cannot be built on two different streets without having two separate estimates, two separate advertisements for bids, two separate contracts, and two separate ordinances levying assessments, then the special findings may be applicable; but the ingenuity of counsel will be taxed in vain to discover any law to bear out the theory. All that the law requires is, that the assessments shall be made according to the frontage of each lot on the sidewalk built. And so long as the engineer makes an estimate for each sidewalk according to the front foot of each lot, it can work no possible prejudice to any lot-owner that several sidewalks are embraced in the same report and estimate. This may also be said of the publication of the estimates in the advertisement for bids, the entering into contract for the work, and the levying of assessments by ordinance to pay for the same. Indeed these are obvious advantages to the lot owners, who must pay the expenses.

*W. W. Guthrie*, for defendant in error:

1. Atchison is a city of the second class. Challiss owned the seven lots, and all taxes thereon except this "special assessment," were paid. A single contract was made by the city council for the building of all the sidewalks on *seventeen* different streets—some graded, some not; some to be laid on the ground, others to be supported by posts five feet high, etc., and the assessment was made at 28½ cents per front foot *regardless of value.*

The liability of property owners is such as is imposed by express law. In this case the city was authorized "to make sidewalks, by assessments on all lots and pieces of ground *abutting on the improvement*, according to the front foot thereof." "Abutting on the improvement" means, each lot-owner must pay for the sidewalk in front of his lot.

Must Challiss, who owns lots only on Kansas Av., at a level place, be required to help build a bridge on Park street,

a half mile distant, five feet from the ground, and maintain it against the floods?

2. Can lot-owners be compelled to build sidewalks on unimproved streets. We say not. Sidewalks, paving, macadam, and curbs are in their very nature the finishing of the *permanent* improvement of the street. Can the property owner be compelled to macadam only to change the grade, and require it to be done over? Even to change an established grade to the injury of adjoining improved property, requires compensation. 7 Ohio St., 459.

3. The legislature has provided the order in which streets may be improved: 1st, To open and improve streets, etc.; 2d, To build sidewalks; 3d, To pave and macadam, etc. Until by general city taxation the streets have been opened, sidewalks or paving cannot be compelled from lot-owners. This matter is not one of legislative discretion by the council, but the execution of express delegated authority. 5 Ohio St., 592; 12 Minn., 64.

The contractors were required "to open and improve the streets" in so far as was necessary to receive the sidewalk. Can "bridges," under the name of "sidewalks," be built at expense of lot crossed by the stream, or a substitute for grading made by the erection of posts five feet high?

The opinion of the court was delivered by

BREWER, J.: The main question in this case, that upon which it was decided in the district court is this: Had the city of Atchison the power to contract in one contract for building sidewalks on different streets, in different parts of the city, and to make assessments therefor on the lots fronting on such sidewalks? The district court held that it had not, but must assess the lots on each street only for the sidewalk built thereon. In this we think the court erred. Atchison is a city of the second class; as such it is given, by § 30, paragraph 2 of the act concerning cities of the second class, (Gen. Stat., p. 160,) power "to open and improve streets, avenues and alleys, make sidewalks and build bridges, culverts and sewers

within the city, and for the purpose of paying for the same shall have the power to make assessments in the following manner, to wit: * * For making and repairing sidewalks, the assessments shall be made on all lots and pieces of ground abutting on the improvement, according to the front foot thereof."*

The power to make sidewalks is here given, absolutely and without limitation. When and upon what streets they shall be made is committed to the discretion of the mayor and council. Their determination is final. No party can by mandamus compel them to make, none by injunction restrain them from making. This discretion is not limited to a single street. They may sidewalk the whole city at once, and by a single contract. But the right to assess the lots fronting on the improvement to pay for the same is co-extensive with the power to make it. Nothing in terms or by implication restricts the assessment to a single street. True, as urged, a sidewalk on one street may cost more than a sidewalk on another, and if both be united in one contract and one assessment, the owner of a lot on the latter street may have to pay more than if his street only was sidewalked. But the same is true not only of two streets, but also of two blocks on the same street, or of two lots in the same block. Still there is no injustice in apportioning the entire cost of a sidewalk upon the several lots fronting it. The value of a sidewalk depends greatly upon its extent. One in front of a single lot with none in front of the adjacent lots is of comparatively little benefit. One object of a sidewalk, as of grading or macadamizing a street, is to secure easy and convenient means of approach; and within certain limits the farther those easy and convenient means of approach are extended the greater the benefit to the lot. Injustice may be done by uniting in one contract and assessment streets in different parts of the city, not connected by sidewalks, and upon which the cost of construction is different. But almost any power may be abused. Still, that possibility is no argument

1. Power of city to build sidewalks.

[ * THE same provision will be found in §16, ch. 62, (p. 148,) Laws of 1871; also, in §32, ch. 100, (p. 200,) Laws of 1872; and in §3, ch. 65, (p. 128,) Laws of 1873.—REPORTER.]

against its existence. In this case the right was reserved to each lot-owner to make the sidewalk in front of his lot, and thus be relieved from any further liability on account of such sidewalks. This right the defendant in error failed to avail himself of.

II. It is urged that as the street fronting the lots of defendant in error had never been graded no power to side-walk existed. The findings of fact showed that this street was a regular street of the city, had long been open to public use, and daily used for public travel, but had not been graded

*2. Improvement of streets; grading, building sidewalks, etc.*  at or near the lots of defendant in error, though the ground was of an easy grade and the sidewalk nearly even with the ground. It does not appear from the findings that the street was in a condition even to require grading. In many of our cities and villages, especially those on the prairies, the natural grade is the best, and every shovelful of dirt that is moved injures rather than improves the street. Can such a street never be sidewalked? But we do not care to put our decision on this ground. The city is not restricted as to the order in which it shall make improvements on a street. There is in the nature of things no fixed and absolute order in which improvements are needed. The necessities of business, and the convenience of travel, may require that one street be macadamized first, and that another be sidewalked first. There is need that discretion in this matter be vested somewhere. It is vested in the mayor and council. The fact that one power is named in the charter subsequent to the other does not prove that one is subordinate to the other, or that one must be used before the other is resorted to. The power to make sidewalks is named before the power to build bridges, culverts, and sewers. Cannot a city build a sewer under a street until after it has made a sidewalk upon it?

III. The other objections raised by counsel for defendant in error relate to irregularities in the proceedings to collect

*3. Irregularities in proceedings to collect taxes.*  the tax. These irregularities, if any existed, (and we express no opinion either way upon those points,) cannot be inquired into in this injunction proceeding.

Henderson v. Kennedy.

For, the power to do the work being given by law, and the work being done, equity will not interfere to relieve the lot-owner from the payment of the cost simply on account of irregularities in the proceedings to collect.

This case being here upon special findings of fact, with no motion to set them aside, and no exceptions by defendant in error, the order will be that the judgment of the district court be reversed and the case remanded with instructions to said court to render judgment on the findings in favor of V. W. Parker, treasurer, etc., the defendant below, for costs.

All the Justices concurring.