THE UNION PACIFIC RAILROAD COMPANY V. THE CITY
OF ABILENE *et al.*

No. 15,636.    ( 98 Pac. 224.)

SYLLABUS BY THE COURT.

1. PLEADINGS—*Unconstitutionality of a Statute.* The unconstitutionality of a statute or of proceedings under a statute need not be pleaded with any greater definiteness or certainty than other issues, and the determination of whether a material constitutional question is presented is to be made by construing the pleadings according to the usual methods.

2. TAXATION—*Special Assessments—Property Owner's Right to Notice and a Hearing.* The fundamental fact upon which the validity of special assessments rests is an increment of benefit to the property taxed resulting from the improvement, and the property owner must, at some stage of the proceedings, have notice and opportunity to be heard, or the equivalent of such notice and opportunity, before a special assessment can become a valid charge against him.

3. ——— *Same.* The legislature may lawfully prescribe the rule by which the benefits accruing to real estate from a local improvement shall be apportioned. Should it do so the theory of the law is that the property owner has been given the equivalent of notice and a hearing upon that subject by representation in the legislature.

4. ——— *Same.* When one or more essential features of a special-assessment proceeding are committed to some tribunal or body inferior to the legislature, notice and an opportunity to contest them must be allowed.

5. ——— *Same.* It is not necessarily fatal to a special-assessment statute that it does not contain an express provision relating to notice and a hearing. When the terms of the statute permit, such a provision may be implied.

6. ——— *Method of Apportioning Benefits—Front-foot Rule.* The legislature may lawfully prescribe the front-foot rule as a reasonable method of apportioning the benefits accruing to real estate from a local improvement. If palpable injustice. result from the application of that rule equity may interfere, but unless it be patent and obvious that the burden imposed is entirely disproportionate to benefits received the claimed excess will not be enjoined.

7. ——— *Notice and a Hearing—Act Unconstitutional.* Chapter 132 of the Laws of 1903, providing for the sprinkling of

streets in cities of the first and second classes and authorizing such cities to levy a tax therefor, delegates certain essential features of the proceeding to a class of property owners in a manner excluding notice and a hearing to others interested. Therefore it is unconstitutional and void.

8. ———— *Special Assessments—Street-sprinkling.* The question whether street-sprinkling benefits abutting real estate in the sense that it may be specially assessed to defray the cost is not decided.

Error from Dickinson district court; Oscar L. Moore, judge. Opinion filed November 7, 1908. Reversed.

*N. H. Loomis, R. W. Blair,* and *H. A. Scandrett,* for plaintiff in error.

*C. S. Crawford,* for defendant in error.

The opinion of the court was delivered by

Burch, J.: In the year 1903 the legislature passed an act which reads as follows:

"Section 1. Whenever, in any city of the first or second class, a petition shall be filed with the clerk of any such city, signed by a majority of the resident owners of real estate fronting on any street or portion of street not less than two blocks in length, requesting the mayor and council of any such city to have said street or portion of street not less than two blocks in length sprinkled, setting forth the length of time during which the sprinkling is to be done, it shall be the duty of said mayor and council thereupon to provide for the sprinkling of said street or portion of street not less than two blocks in length named in said petition, by letting the contract to the lowest and most responsible bidder.

"Sec. 2. For the purpose of defraying the costs and expenses of said sprinkling, the said mayor and council are hereby authorized and empowered to levy upon the real estate fronting upon said street or portion of street not less than two blocks in length named in said petition a tax sufficient to defray the entire expense of said sprinkling, including cost of sprinkling intersections, which tax shall be apportioned according to the

lineal front footage of property adjacent to said street or portion of street sprinkled, without regard to improvements thereon.

"SEC. 3. The amount of said assessments so levied shall be paid into the treasury of any such city on or before the 1st day of August in each and every year, and in case the same shall not have been paid within that time, the amount so levied shall be certified to the clerk of the county in which said city is located by the clerk of any such city at the same time and in the same manner as other city taxes, to which amount shall be added a penalty of fifteen per cent. thereof." (Laws 1903, ch. 132.)

In May, 1906, a petition was filed with the clerk of the city of Abilene, a city of the second class, signed by a majority of the resident owners of property fronting on certain streets, praying that such streets be sprinkled for the years 1906, 1907, and 1908. Pursuant to the petition the mayor and council ordered the streets designated to be sprinkled for a period of one year, commencing June 6. Bids were invited, a responsive offer was accepted, and a contract was entered into accordingly. On July 6 an ordinance was passed levying a proportionate share of the cost and expenses of the year's sprinkling upon real estate of the Union Pacific Railroad Company (which did not sign the petition), according to its foot frontage on some of the streets sprinkled. The ordinance was published on July 18, and the assessment not having been paid prior to August 1 the levy was certified to the county clerk. Upon the threat of the county treasurer to collect the assessment the railroad company commenced a suit to enjoin him from so doing, the city being made a party defendant. Issues were framed and tried, an injunction was refused, and the plaintiff prosecutes error.

The chief contention in this court is that for various reasons the statute and proceedings ending in the levy are unconstitutional, and therefore void. The defendants claim that constitutional questions are not raised by the pleadings. The petition contains charges of

illegality in general terms, among them being the following:

"Said plaintiff further alleges that the city of Abilene has never had any jurisdiction or authority of law to make the above assessment; . . . that said city made the contract for sprinkling without any right or authority to do so; . . . that at no time has there been a legal determination that any tax was assessable against the property of the plaintiff above described."

The subsequent pleadings do not limit the scope of these allegations. The answer recites the proceedings upon which the assessment was based, and the reply contains the following unchallenged assertions:

"Said plaintiff denies that said city of Abilene entered into any legal contract with Jay Harding for the sprinkling of streets described in said plaintiff's petition, and said plaintiff denies that the tracts of land described in said plaintiff's petition were included in the ordinance referred to in said answer or made a part of any sprinkling district of said city of Abilene, and said plaintiff denies that any of the property described in said plaintiff's petition was legally taxed or charged any amount whatever for sprinkling purposes."

The defendant might have moved to strike from the petition and the reply the allegations quoted or might have moved for more definite and certain statements. Not having done so, the question of the illegality of the assessment was opened as widely as possible and includes the unconstitutionality of the statute and of the proceedings under it. That constitutional questions were considered and decided in the district court is clear from the fact that the trial judge requested argument upon them at the conclusion of the evidence.

The unconstitutionality of a statute or of proceedings under a statute need not be pleaded with any greater definiteness or certainty than other issues. General statements, and even conclusions which by fair intendment are directed to the point, will be sufficient if not assailed by motion. A general demurrer will raise the question. True, reluctance to hold an act of the legis-

lature void leads the court to refuse a hearing to one not injured by the statute, to enforce estoppels against a plea of unconstitutionality, to seek other grounds for the decision of causes, if full justice may still be accomplished, and to adopt a special code of rules of interpretation. But the determination of whether a material constitutional question is actually presented is to be made by construing the pleadings according to the usual methods.

The plaintiff argues that the assessment is void because of the arbitrary character of the statute, which controls the conduct of the mayor and council at all points and allows no opportunity at any stage of the proceedings for notice to property owners and a hearing with respect to their interests. The front-foot rule of apportioning special assessments which the statute requires the mayor and council to act upon is condemned as contrary to the constitution of the United States, and it is vigorously contended that street sprinkling is not a local improvement in the sense that special assessments may be levied against abutting real estate to pay its cost.

The last question may be left one side. Courts of the highest authority differ in opinion respecting it, the rights of the parties to this litigation may be determined without deciding it, and for present purposes it may be assumed that the legislature may authorize special assessments against city property to pay the cost of sprinkling adjacent streets.

The front-foot rule of apportioning special assessments was definitely approved by this court in the case of *Parker v. Challis*, 9 Kan. 155, decided in 1872. The syllabus reads as follows:

"A city of the second class has power to stipulate in one contract for making sidewalks on several streets, and to assess the cost thereof upon the different lots fronting on such sidewalks, according to the front foot thereof."

In the opinion it was said:

"They [the mayor and council] may sidewalk the whole city at once, and by a single contract. But the right to assess the lots fronting on the improvement to pay for the same is coextensive with the power to make it. Nothing in terms or by implication restricts the assessment to a single street. True, as urged, a sidewalk on one street may cost more than a sidewalk on another, and if both be united in one contract and one assessment the owner of a lot on the latter street may have to pay more than if his street only was sidewalked. But the same is true not only of two streets but also of two blocks on the same street, or of two lots in the same block. Still, there is no injustice in apportioning the entire cost of a sidewalk upon the several lots fronting it. The value of a sidewalk depends greatly upon its extent. One in front of a single lot with none in front of the adjacent lots is of comparatively little benefit. One object of a sidewalk, as of grading or macadamizing a street, is to secure easy and convenient means of approach; and within certain limits the farther those easy and convenient means of approach are extended the greater the benefit to the lot. Injustice may be done by uniting in one contract and assessment streets in different parts of the city, not connected by sidewalks, and upon which the cost of construction is different. But almost any power may be abused. Still, that possibility is no argument against its existence." (Page 161.)

The court has adhered to this doctrine ever since it was announced, and the legislature has continually acted upon it. It is sustained by the great weight of authority in the United States. For a time it seemed that the rule might be endangered by the decision of the supreme court of the United States in the case of *Norwood v. Baker,* 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, but the scope of that decision has been limited and explained by the opinions in *French v. Barber Asphalt Paving Co.,* 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879, and subsequent cases, so that the position taken in *Parker v. Challis,* 9 Kan. 155, is still sound. The front-foot rule is a reasonable method of ascertaining and

apportioning the benefits accruing to real estate from local improvements, and may lawfully be utilized by the legislature or any subordinate tribunal authorized to make the assessment. It may be abused, and palpable injustice may result, in which event equity may interfere. But if it be not patent and obvious that the burden imposed is entirely disproportionate to benefits received the claimed excess will not be enjoined, although the property owner has had no opportunity to contest the rule.

The fundamental fact upon which the validity of special assessments rests is an increment of benefit to the property taxed resulting from the improvement, and the property owner must at some stage of the proceedings have notice and opportunity to be heard, or the equivalent of such notice and opportunity, before a special assessment can become a valid charge against him. (*Gilmore, County Clerk, v. Hentig,* 33 Kan. 156, 5 Pac. 781.)

If not forbidden by the constitution the legislature may assume complete control over the whole subject of a public improvement, from the fixing of the district boundaries down to the apportionment of the assessment, or control over one or more of the essential steps, and if it should do so the theory is that the property owner is given the equivalent of a notice and hearing by representation in the legislature. (*Parsons v. District of Columbia,* 170 U. S. 45, 18 Sup. Ct. 521, 42 L. Ed. 943; Gray, Lim. of Tax. Power & Pub. Indebt. § 1130.) In the work last cited it is said:

"According to the theory of constitutional government, the acts of the legislature in determining that a tax shall be laid, in fixing the boundaries of the district taxed, in determining the sum to be raised, the rate of the tax, and the rule of apportionment, are the acts of the whole state; the individual is not entitled to any notice at all of the legislative proceedings, and has no right to demand a hearing before the legislature. This proposition is derived from the nature of constitutional government. Each citizen is represented in the

legislature; he is heard there through the voices of the popular representatives; the act of the legislature is his act."   (§ 1130.)

A distinction is made, however, when one or more essential features of a special-assessment proceeding are committed to some tribunal or body inferior to the legislature.   In that event notice and opportunity to contest them must be allowed.   The principle is illustrated by the case of *Fallbrook Irrigation District v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369. There the legislature committed the formation of an irrigation district to a subordinate body.   In the opinion it was said:

"The legislature by this act has not itself named any irrigation district, and, of course, has not decided as to the nature and quality of any specific lands which have been included in any such district. . . . The legislature, not having itself described the district, has not decided that any particular land would or could possibly be benefited as described, and, therefore, it would be necessary to give a hearing at some time to those interested upon the question of fact whether or not the land of any owner which was intended to be included would be benefited by the irrigation proposed.   If such a hearing were provided for by the act, the decision of the tribunal thereby created would be sufficient."   (Pages 166, 167.)

Provision for notice and hearing need not be made in the statute by express words.   It may be implied. In reality the courts simply read the provision into the statute in order to uphold taxation schemes against the fourteenth amendment to the constitution of the United States, which forbids any state to deprive any person of property without due process of law.   This was done in the case of *Gilmore, County Clerk, v. Hentig,* 33 Kan. 156, 5 Pac. 781.   But the statute must be one which will allow notice and a hearing to be interpolated.   If it arbitrarily fixes the steps to be taken in a manner indicating that notice and a hearing upon some subject

like benefits are excluded, it must be judged accordingly.

Turning to the statute it is clear that the sum to be apportioned against the property in the sprinkling district is the contract price of the work. The amount is fixed by the accepted bid, which the property owner can not reduce or controvert. The city authorities have no discretion over the rule of apportionment, and the property owner has no right to be heard upon that question. The legislature has exercised its lawful power to prescribe the front-foot rule. Exclusive jurisdiction over the necessity for the improvement, the extent of the sprinkling district and the question of benefit from the improvement to tracts of property in the district is conferred upon resident property owners. The power conclusively to determine all these matters is delegated unqualifiedly to them, and they may, at will, without any kind of notice, hearing or liability to revision irrevocably bind all the property in any expanse of territory greater than two blocks in which a majority can be secured to sign the petition. The language of the statute is that upon the filing of the petition "it shall be the duty of said mayor and council thereupon to provide for the sprinkling of said street or portion of street" by letting a contract. The obligation is imperative, and it would be the duty of the courts to coerce the mayor and council by mandamus should they disregard the prayer of the petitioners. Neither the city officials nor the courts can listen to the complaint of an aggrieved property owner. This is not merely a delegation of legislative power—it is the grant of a private license to disregard due process of law and tyrannize over other private individuals. Legislation of this character is discussed in *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416, and *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598, 63 L. R. A. 630, 104 Am. St. Rep. 384. In Abbott's case a statute directed the board

of county commissioners to improve county roads upon private petition. In the opinion it was said:

"The first contention is that chapter 214 is unconstitutional because it attempts to delegate legislative power to the petitioners, and confer upon them the absolute and arbitrary power to levy taxes and special assessments on the property of others. The petitioners named in the statute are authorized, absolutely and arbitrarily, to determine whether the improvement is necessary and shall be made. No discretion, exercise of judgment, or revisory or supervisory control, is vested in the board of county commissioners or any other tribunal or officer elected by or responsible to the people. When the petition is presented to the board of county commissioners demanding the improvement of a road, it is, in the language of the statute, 'made the duty of such county commissioner to cause the same to be improved.' The county commissioners have no discretion to refuse the improvement." (52 Kan. 158.)

In Leimbach's case a statute required tracts of land to be taken out of a city upon private petition. In the opinion it was said:

"Under the provisions of the act the will that the corporate boundaries shall be changed proceeds not from the legislature or from the council, but from the signers of the petition, who are under no official responsibility, and of whom no other qualification is required than that they desire the change. These provisions are therefore void." (68 Kan. 46.)

It may be admitted that a landowner may go to a court of equity and show that his property does not lie in the taxing district, but the clear intent of the law is that the necessity for the improvement, the size of the district, the question of benefits to property in the district, the cost of the improvement and the rule of apportionment—all the factors of a lawful assessment but one—shall not be contested or reviewed.

The point that section 1 of the statute delegates legislative power to private parties is not specifically made in the brief for the plaintiff and the statute can not be held void on that ground in this case. Since, however,

the effect of the section is to forbid notice and a hearing upon matters concerning which property owners have a constitutional right to be. heard, that specification of invalidity is sustained.

The judgment of the district court is reversed, and the cause is remanded with instruction to grant a permanent injunction, as prayed for in the petition.