THE UNION PACIFIC RAILROAD COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LEAVENWORTH et al., *Appellees*.

No. 17,991.

THE UNION PACIFIC RAILROAD COMPANY, *Appellant*, v. THE BOARD OF COUNTY COMMISSIONERS OF. THE COUNTY OF LEAVENWORTH et al., *Appellees*.

No. 17,992.

SYLLABUS BY THE COURT.

1. DRAINAGE DISTRICT — *Corporation De Facto—Taxation—Injunction*. Although the petition preliminary to the incorporation of a drainage district under chapter 215 of the Laws of 1905 incorrectly described the territory intended to be included in the district, the board of county commissioners un-

dertook to incorporate all the territory and· the inhabitants thereon as a drainage district and to make a body politic and corporate, and the petitioners, the owners of the land, the public officers and·the district itself have since proceeded on the theory that all of the territory intended to be described in the petition constituted a drainage district, and it has since assumed to be a corporation, and its officers have exercised corporate functions to the extent of building a levee, erecting a floodgate and issuing bonds to pay for the same, and subsequently levied a tax in payment of the bonds. *Held,* that the district will be deemed to be a corporation *de facto,* and the tax so levied can not be enjoined because of the irregularity in the organization.

2. ——— *Taxpayer Estopped to Enjoin Collection of Tax.* Where a taxpayer encourages the making of an improvement of a drainage district by affirmative action and, in a way, induces the officers of the district to construct a floodgate and levee upon his property at public expense by which he receives a benefit, he is not in a position to ask a court of equity to enjoin the collection of a tax levy to pay for the improvement because of defects in the incorporation of the drainage district.

3. ——— *Drainage Act—Constitutional.* The drainage act (Laws 1905, ch. 215) does not conflict with the constitution by delegating, or attempting to delegate, legislative power to the petitioners who ask for the organization of a drainage district, nor because of the taxing powers conferred upon drainage districts.

Appeals from Leavenworth district court. Opinion filed March 8, 1913. Affirmed.

*R. W. Blair, B. W. Scandrett,* and *C. A. Magaw,* all of Topeka, for the appellant.

*J. B. Kelsey,* county attorney, *Lee Bond, M. N. McNaughton,* both of Leavenworth, *L. W. Keplinger,* and *C. W. Trickett,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: These actions were brought by the Union Pacific Railroad Company to enjoin public officers from collecting taxes levied upon its property by

the Lenape drainage district for the purpose of building a levee, floodgate, and the making of other improvements to protect the territory within the district from injury by overflow of the river. The proceedings toward the incorporation of the district were taken under the provisions of chapter 215 of the Laws of 1905. The incorporation was initiated by a petition in which, through a clerical error, the territory intended to be included in the district was incorrectly described. The territory as described in the petition was:

"Commencing at the northwest corner of the N. W. ¼ of section 21, township 12, range 22; running thence south to the northerly bank of the Kansas river at ordinary high-water mark; thence down along said bank of said river at ordinary high-water mark to a point due south of the northeast corner of the S. E. ¼ of the S. W. ¼ of section 14-12-22; thence west 80 rods; thence south 80 rods; thence west to the point of beginning."

The boundaries of the territory intended to be included in the district and which was incorporated in it were:

"Commencing at the northwest corner of the N. W. ¼ of section 21, township 12, range 22; running thence south to the northerly bank of the Kansas river at ordinary high-water mark; thence down along said bank at ordinary high-water mark to a point due south of the N. E. corner of the S. E. ¼ of the S. W. ¼ of section 14-12-22; thence north 80 rods; thence west 80 rods; thence south 80 rods; thence west to the point of beginning."

The difference in the description, as will be observed, is that after the figures "14-12-22" there was omitted the locative call "thence north 80 rods." The error is manifest on the face of the petition, as the last call, "thence west to the point of beginning," does not lead to the starting point.

It is contended that because of the faulty description

a part of the territory on which the tax was levied was not within the district, and it is insisted that there was no authority in the officers to levy a tax on property outside the boundaries as defined in the petition. The actions were tried upon an agreed statement of facts, under which it is made clear that the defective description in the petition was a mere clerical error. The error in the petition, however, was not carried into the other proceedings of incorporation, which it is stipulated were "strictly in conformity with the statute." All the territory upon which the tax was levied was intended to be incorporated into the district, and all the parties, including the petitioners, landowners and officers, as well as the appellant itself, proceeded on the theory that the territory intended to be included in the district was really incorporated into it. It appears that persons who owned lands and had residences in the district, but outside of the territory described in the petition, signed the petition for the incorporation of the district. The levee and floodgate were built on the right of way of the Union Pacific Railroad Company and in the district as it was intended to be incorporated, but they were not within the territory as described in the petition. The company, it appears, was not present or represented at any meeting of the board of directors of the drainage district, but it knew of the erection of the levee and floodgate on the right of way, and it even "prescribed the conditions and elevation, the manner in which the levee should cross its right of way and tracks, and the location of the floodgate." In their proceedings the directors of the drainage district described the improvement as one that benefited the entire district, and they provided that bonds should be issued to build the improvements and that these bonds were to be paid by a tax levied upon all the taxable property within the district. The improvements were made according to plans and specifications prescribed, and these extended on and over the right of

way and tracks of the railroad company and in a territory not described in the petition, but they were in the district which the officers undertook to incorporate. The tax was levied upon all the property within the territory intended to be described in the petition, and all the tax so levied has been paid by the owners of the property within this territory except that levied against the Union Pacific Railroad Company.

While there was an error in the initiatory steps taken towards the incorporation of the district, the agreed facts of the parties show that the territory intended to be organized into a drainage district was in fact organized and treated as a body politic and corporate. The incorporation consists of the territory and the inhabitants residing therein, and the whole territory as well as the inhabitants have assumed to be a corporation and to exercise corporate functions. It was irregularly organized, of course, but the inhabitants of the entire district and the officers have proceeded on the theory that all the territory intended to be included was in the incorporated district, and the drainage board has exercised control over the territory which they sought to incorporate. There having been a *bona fide* attempt to create a municipality, including all the territory, and it having assumed to be a corporation and to exercise corporate functions, it is a corporation *de facto* notwithstanding the defective petition and the irregularity in the preliminary steps. Having an existence in fact under color of law, the regularity of the organization and its right of existence can only be challenged by the state in a direct proceeding for that purpose and is not open to collateral attack by a private person. This principle was applied where the statute under which the municipality was created was unconstitutional. (*In re Short, Petitioner,* 47·Kan. 250, 27 Pac. 1005.) In a case where the initial steps to organize a corporation were attacked as well as the sufficiency of the petition upon which

the order of incorporation fixing the boundaries of a city was based, it was held that the municipality having proceeded on the theory that the incorporation was effective, and having assumed to be a corporation and to exercise corporate functions, it was a *de facto* municipality, and the regularity of its incorporation or its corporate existence was not open to attack by a private individual. (*Levitt v. Wilson,* 72 Kan. 160, 83 Pac. 397; see, also, *Topeka v. Dwyer,* 70 Kan. 244, 78 Pac. 417.)

The error of description in the petition is manifestly one of form rather than substance, one that might have been corrected at any time, and it is, therefore, a matter of doubt whether upon a direct attack by the state the incorporation would be held to be invalid as to any of the territory. Besides, there is good reason for the contention that appellant is estopped to ask an injunction because of its attitude and actions when the organization was effected and the improvements made. It made no objection when the publication notice was given of the organization of the district. But it was not content with a mere passive dissent; instead of silent opposition or an unresisting attitude the appellant took affirmative action and encouraged the making of the improvement and the assumption of the obligations by the district to pay for them. As we have seen, the appellant selected the location for the floodgate on its right of way and prescribed the height of the levee and the manner in which it should be built across its right of way and tracks. Having encouraged and, in a way, induced the officers of the district to make the outlay on its property, and which necessarily benefited it, the appellant is not in a position to ask a court of equity to enjoin the collection of the taxes against its property to pay for the improvement. (*Stewart v. Comm'rs of Wyandotte Co.,* 45 Kan. 708, 26 Pac. 683, 23 Am. St. Rep. 746.)

One of the grounds upon which injunction is asked

is that no notice was given appellant, or opportunity to be heard when the board determined that the improvements would benefit its property. That would have been a very serious objection if a special assessment had been made to pay for the improvements. Two methods are provided for making improvements under the drainage act, one by special assessment upon the real estate that may be benefited by the improvement and in proportion to the benefit, and the other by the levy of a general tax on taxable property of every kind in the district. (Laws 1905, ch. 215, § 7, subdivs. 11, 12, Gen. Stat. 1909, § 3006.) In this instance the latter method was adopted, and the election, the issuance of the bonds and the levy of the tax, and every other step in the proceedings, were taken under the section of the act which provides that the expense of such improvement shall be met by a general tax. (Laws 1905, ch. 215, §§ 24-26, Gen. Stat. 1909, §§ 3023-3025.) Notice, as well as a hearing, is required in the case of special assessments (Laws 1905, ch. 215, § 22, Gen. Stat. 1909, § 3021), but no such requirement is made where a general tax is to be levied, and a special notice or hearing of that kind is not essential to a valid levy of a general tax in a taxing district legally created. It is not necessary in a drainage district any more than it would have been in the case of a school district, a township or a county.

It is next contended that the act is unconstitutional in that it delegates legislative power to those who petition for the incorporation of the drainage district. The validity of the act was attacked and sustained in *The State v. Monahan*, 72 Kan. 492, 84 Pac. 130, 115 Am. St. Rep. 224, and *Roby v. Drainage District*, 77 Kan. 754, 95 Pac. 399. These cases, in effect, hold that the legislature has the power to build levees to prevent the overflow of natural watercourses and to protect land from damage resulting from overflow within particular districts; that this power may be

exercised through public corporations organized for that purpose; that drainage districts provided for are creations of the legislature itself, and that such corporations are taxing districts, and that the officers thereof, under legislative authority, can levy a general tax or special assessments to pay for such improvements.   Legislative power is not delegated to the petitioners as was attempted in *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416, or as in *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598, 63 L. R. A. 630, 104 Am. St. Rep. 384, but the power is exercised by the legislature itself by the passage of the drainage act, which is to become operative in any part of the state when certain conditions are found to exist and certain agencies or instrumentalities for which it provides are organized.   The operation of the law does not depend on the will of the petitioners, but it is the will of the legislature which is to be put in force when the board of county commissioners find that the prescribed conditions exist within the district which the petitioners ask to have incorporated.   If the conditions are found to exist a corporation is organized and an election held to choose the officers of the district, who proceed to make the improvements as the legislature has provided.   The law becomes effective on these contingencies somewhat as it did in the metropolitan police act, under which a board was appointed by the executive council of the state, in which was vested the control of the police force of the city, its organization, government and discipline.   It was argued that the legislative power was unlawfully delegated to the executive council, but it was said:

"The act in question, however, does not, in our opinion, confer any legislative power on the executive council.   It came from the legislature, formal and finished.   The executive council is not authorized and can not add to or take from the act a single provision or word.   The expediency of the law, the classes of cities which may be brought within its provisions,

Railroad Co. v. Leavenworth County.

the contingency upon which its operation depends, have all been determined and expressed by the legislature. The action of the executive council, taken upon the petition of the householders, is the contingency upon which the operation of the law depends. When this contingency arises, the law, positive and detailed in its provisions, takes effect." (*The State, ex rel., v. Hunter*, 38 Kan. 578, 583, 17 Pac. 177.)

A contention is also made that the power to levy a general tax, being legislative in its nature, can not be delegated to the officers of the drainage district. The tax in question was levied, as we have seen, in pursuance of a positive statute, the drainage act, and in conformity with its requirements. The general rule, with reference to the delegation of the taxing power, is subject to this exception: A public corporation created to discharge a governmental function may be entrusted with the power of general taxation in aid thereof. (*Wulf v. Kansas City*, 77 Kan. 358, 94 Pac. 207, and cases cited; 37 Cyc. 725, note 37.) A drainage district that is created to take measures for the protection of life and property is within this exception, being analogous in this respect to municipal corporations such as cities and villages. (See, also, *Cole v. Dorr*, 80 Kan. 251, 101 Pac. 1016, 22 L. R. A., n. s., 534, and cases cited.)

Appellee urges other reasons why injunction is not available to appellant and why the judgment of the trial court should not be disturbed, but a consideration of these is unneccessary to the disposition of the cases. Upon the grounds stated the judgment of the district court in each of the cases will be affirmed.