No. 22,296.

THE STATE OF KANSAS, ex rel. HERBERT E. RAMSEY, as County Attorney of Reno County, *Appellee and Appellant,* v. J. J. LAMONT et al., *Appellants and Appellees.*

### SYLLABUS BY THE COURT.

1. RURAL HIGH-SCHOOL DISTRICTS—*Statute Authorizing their Formation Constitutional and Valid.* Chapter 284 of the Laws of 1917 is held not unconstitutional because of the insufficiency of its title, the application of certain provisions of other acts, the amendment of certain sections of another statute, the classification of rural high-school districts or the basis thereof, nor because the act is special or of unequal operation throughout the state.

2. SAME. The provisions of the chapter in question touching the formation of rural high-school districts are not void as a delegation of legislative power.

3. SAME—*Statute Not Repealed.* Such chapter does not repeal section 9175 or section 9176 of the General Statutes of 1915.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed June 7, 1919. Affirmed.

*F. Dumont Smith,* of Hutchinson, for the appellants.

*F. L. Martin, John M. Martin, Walter F. Jones,* all of Hutchinson, and *William H. Burnett,* county attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: The state, on the relation of the county attorney, sought to enjoin the collection of taxes levied for the rural high school located at Turon, Kan., which had been organized under chapter 284 of the Laws of 1917, and to disorganize such rural high-school district. It was alleged that a petition to disorganize had been presented to the board and that consideration thereof was refused.

The principal ground of the attack was the alleged invalidity of chapter 284. The court held this act valid, and held that when the petition for disorganization was presented, the statutory time therefor had passed, and that the provisions of the chapter touching the disorganization of a district formed before the passage of the act did not apply. It was found that

certain common-school grades were being taught, and the use of the rural high-school funds for such purposes was enjoined. Aside from this, the court found for the defendants and divided the costs between the parties.

The district appeals from the order granting the injunction, and the plaintiff, in a cross appeal, insists upon the invalidity of chapter 284. In their reply brief, the defendants state that the state board of education has, since the decision, expressly authorized the teaching of certain elementary grades, as provided by section 7 of the act in question. Assuming this to be correct, the injunction order was proper when made, but would seem now to have spent its force.

This leaves the validity of the statute for consideration. One ground of the attack is that the title contains more than one subject clearly expressed; another, that it attempts to apply the provisions of an act of 1905, and its amendments, and seeks to amend chapter 311 of the Laws of 1915 without re-enactment; also, that the classification is bad, and that the statute is not one of equal operation throughout the state.

The title of the act relates to rural high-school districts, and amends nearly all of chapter 311 of the Laws of 1915, which was an act relating to the establishment of rural high-school districts, so that thus far the title contains but one general subject. Then comes the clause:

"Providing that the provisions of chapter 397 of the Laws of 1905, with amendments thereto, shall apply to rural high-school districts; . . . ."

The features of these provisions sought to be applied to the rural high school are the certification and apportionment of taxes between high-school districts and common-school districts which send pupils thereto. This is made plain by section 8 of chapter 284, which, after applying these provisions (including chapter 272 of the Laws of 1911, relating to joint high-school districts) provides:

"That the rural high-school board may levy a tax as provided in section 3 of this act for the purposes therein mentioned to supplement the amount which may be apportioned to said rural high-school district from the county high-school fund."

Section 9 has reference to the duties of the county treasurer to pay over to the treasurer of rural high-school districts the proper proportion of the high-school funds, in accordance with

the act of 1905 and its amendments. While this method of legislation is awkward and not to be commended, it cannot be said to violate any part of the constitution, as it amounts merely to a direction to the proper officials to treat a rural high-school district the same in the respects indicated as they would have to treat a common-school district under the act of 1905, and its amendments.

The amendment and repeal of certain sections of the act of 1915, relating to rural high-school districts, do not impair the validity of the act.

The act, by its own terms, applies to any territory containing not less than sixteen square miles, and comprising one or more townships, or parts thereof, the boundaries of such territory having been approved by the county superintendent of public instruction, or when the superintendents of two or more counties fail to agree, by the state superintendent. Section 3 provides that if the territory contains an incorporated town or city of more than five hundred, certain petitions shall be prerequisite; and a majority of the voters in such town or city and in the territory outside of such town or city shall be required. We do not see how this fails to have uniform operation throughout the state or how it can be deemed a special act. Neither does the population of the incorporated town or city, fixed by the statute as a basis for certain proceedings, amount to an unreasonable or baseless classification, but is within the fair exercise of legislative discretion. It is said that the change in the required population from three hundred in the act of 1915 to five hundred in the present act was made because cities having more than three hundred or less than five hundred "desired to organize a large number of sections into a rural high-school district, for the purpose of compelling them to support a city high school. The act, instead of being one for rural communities, to organize a rural high school and locate it somewhere in the rural community, thus becomes an act by which cities can compel a rural community to support and maintain a city high school." The petition alleges that Turon has more than five hundred inhabitants, but the opinion of the court below states that it was admitted that it has less than five hundred inhabitants. This would leave the required territory, including Turon, free from

the restriction requiring a separate petition and a separate vote, but there is nothing on the face of the statute to indicate a legislative intention simply to burden this one vicinity with the expense of a city high school, for there are, doubtless, many others in the state similarly situated; neither is there anything to show any wrongful motive or object sought to be accomplished.

It is contended that the electors of a certain territory are given authority to form a rural high-school district, and that the act is void because it delegates legislative power. The constitution, article 6, section 2, prescribes that—

"The legislature shall encourage the promotion of intellectual, moral, scientific, and agricultural improvement by establishing a uniform system of common schools, and schools of a higher grade, embracing normal, preparatory, collegiate and university departments."

Notwithstanding the case of *Hutchinson v. Leimbach,* 68 Kan. 37, 74 Pac. 598, holding an act void which provided that one or more persons could practically compel an order by the court to vacate property in a city, and *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416, holding an act void because it delegated to certain persons the power to tax a given territory for road purposes, the legislature has for many years made provisions for the formation of various high schools and high-school districts upon the petition of the electors of a given territory. It may be said, by these enactments, to furnish legislation by which such electors, instead of being compelled, are given the choice, to assume the burden of such high-school concerns. Similar enactments have been tacitly recognized as constitutional. (*Reese v. Hammond,* 94 Kan. 459, 146 Pac. 997; *Fisher v. Beck,* 99 Kan. 180, 160 Pac. 1012.) Whatever may be the proper definition of legislative power, the granting, rather than the exercising, of authority for certain persons to form themselves into a school district would seem to be within its meaning. In *Hill v. Johnson County,* 82 Kan. 813, 109 Pac. 163, a "rock road law" was held valid, notwithstanding such highway could be established by 60 per cent of the landowners along the line who owned 50 per cent of the land to be taxed, upon a finding, however, by the board that the road was to be of public utility. In *Railroad Co. v. Leavenworth County,* 89 Kan. 72, 130 Pac. 855, holding

the drainage act of 1905, chapter 215, valid, it was said in the opinion:

"The operation of the law does not depend on the will of the petitioners, but it is the will of the legislature which is to be put in force when the board of county commissioners find that the prescribed conditions exist within the district which the petitioners ask to have incorporated." (p. 79.)

So it may be said here that the will of the petitioners does not govern, but when the provision made by the legislature is accepted by the electors themselves by the proper vote, it becomes operative. The legislature gives them permission to form themselves into such district, and when, by the proper election, they avail themselves of this permission, they are not exercising legislative power, but merely accepting a privilege conferred by a proper exercise of such power. Such granted permission is one means by which the legislature has seen fit to obey the constitutional mandate to promote education, and such provision is not a violation of the constitution.

Again, no rural high-school district can thus be formed unless its boundaries be first approved by the official at the head of the county school system; and, as the failure or refusal of the superintendent to approve becomes a prerequisite and essential constituent of the scheme, without which the desires and efforts of the petitioners and electors are fruitless, so it cannot be said that the will proceeds from the petitioners or electors alone, and not from the legislature.

It is argued that under this act the petitioners were authorized to violate the provisions of sections 9175 and 9176 of the General Statutes of 1915, and places cities of the third class, or portions of them, in other districts; but as the trial court well remarked in its opinion, these sections have reference to common schools, and not to high schools, and there is nothing in the act complained of which even attempts to authorize the defendant board to place Turon in more than one common-school district.

The decree is affirmed.