No. 29,198.

L. A. BARRETT, HOWARD DAVIES and GEORGE W. THOMPSON, *Appellants*, v. THE CITY OF OSAWATOMIE and THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MIAMI, *Appellees*.

(289 Pac. 970.)

Opinion filed July 5, 1930.

*Jabez O. Rankin,* of Paola, for the appellants.

*Frank M. Sheridan* and *Bernard L. Sheridan,* both of Paola, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action brought in the district court of Miami county to enjoin the city of Osawatomie, the city commissioners of that city, the board of county commissioners of Miami county and the county clerk and county treasurer of that county from levying and collecting special assessments on the land of the plaintiffs lying outside of the corporate limits of the city to pay the costs of constructing a water main on Parker avenue outside of· the city limits. Answers were filed by all the defendants, and after hearing the evidence the court rendered judgment for defendants, denying the injunction, from which judgment the plaintiffs appeal.

Appellants insist that chapter 120 of the Laws of 1925, the act under which the levy and assessment complained of were made, is unconstitutional and void in that it is an attempt to delegate legislative power to the petitioners in violation of section 1 of article 2 of the state constitution. The title of this act is, "An act concerning cities of second class, enabling them to extend water mains and water service to territory lying beyond but adjacent to city limit." It provides that—

"Whenever a majority of the resident property owners owning more than fifty-one per cent of the property to be assessed in territory beyond the city limits of any city of the second class, but adjacent thereto, shall present to the governing body of such city a petition praying for the extension of water mains into said territory, the said governing body of such city shall consider said petition, and if it shall find the extension of said water mains will be of benefit to said city, then the said governing body may, by ordinance, direct the laying and construction of such water mains, together with all the necessary appurtenances, into said adjacent territory."

It is argued that this section delegates to the petitioners, being a majority· of the property owners, authority to have special assessments levied against all the property in the territory, and that the petition is not to be presented to any board or body having jurisdiction of the property outside the city limits.

Appellants cite and rely mainly upon the decision in *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416, where chapter 214 of the Laws of 1887 gave a majority of the resident landowners of a special taxing district, established at their own instance, full power to determine whether the road improvement was necessary and should be made and to compel a levy on all the property in the

district for two-thirds of the expense, and a further levy on all the property of the county to pay one-third of the special tax and assessment, without having any voice in the matter, either through their own votes or through the action of any county tribunal or other elected officer. It was said in that opinion:

"If discretion to make such improvement had been conferred upon the board of county commissioners, or if the improvement or its cost had been referred to all the landholders required to pay any part of the burden of such improvement, the statute might be upheld. . . ." (p. 166.)

That fatal defect in the 1887 road law was carefully avoided in the one here under consideration. It requires that the petition shall be presented to the governing body of the city; it shall be considered by such body, and if it shall find the extension of the water main will be of benefit to the city, then it may by ordinance direct the laying and construction of such extension. There is no semblance of its being an imperative duty of the city government to grant the petition regardless of its own judgment, but on the contrary it may grant it if it finds it will be of benefit to the city. The third section also authorizes the city council to change the size of the pipe if it thinks best, making the increased cost at the expense of the city.

This same question was involved in the case of *Hutchinson v. Leimbach*, 68 Kan. 37, 74 Pac. 598, where a statute provided that a person desiring to remove any tract of land from the corporate limits of the city shall petition the court, and it must be removed if the court finds that no public or private right will be injured, and the law was held to be unconstitutional because there was no condition left to be determined by any officer or body, the court saying:

"If the statute had prescribed affirmative conditions upon which the owners might have their land disconnected from the city as a matter of right, the existence of the conditions to be passed upon by the court, a very different question would be presented." (p. 44.)

The "rock-road law," chapter 201 of the Laws of 1909, was held to be constitutional in the case of *Hill v. Johnson County*, 82 Kan. 813, 109 Pac. 163, and the court compared that act with the Buchan act involved in the Abbott case, *supra*, as follows:

"In its enactment the legislature evidently sought to avoid the defects in the Buchan law, and doubtless for that reason expressly provided that before the improvement prayed for should be ordered by the board, and before any tax could be imposed, the board should first make an order finding and declaring the road to be of public utility." (p. 817.)

In the case of *Railroad Co. v. Leavenworth County*, 89 Kan. 72,

130 Pac. 855, a drainage-district law was under consideration and it was held that legislative power was not delegated to the petitioners, in the following language:

"The operation of the law does not depend on the will of the petitioners, but it is the will of the legislature which is to be put in force when the board of county commissioners find that the prescribed conditions exist within the district which the petitioners ask to have incorporated. If the conditions are found to exist a corporation is organized and an election held to choose the officers of the district, who proceed to make the improvements as the legislature has provided." (p. 79.)

The rural-high-school law was upheld against a similar attack, as not being a delegation of legislative power to the petitioners, in *State, ex rel., v. Lamont,* 105 Kan. 134, 181 Pac. 617, because the act provided for the submission of the question to the voter.

In *Railway Co. v. Cambern,* 66 Kan. 365, 71 Pac. 809, an act authorizing an assessment to construct a levee along the bank of a river, was held not to have delegated legislative power to the petitioners because it provided that the levee might be constructed if the county commissioners "find that the cost thereof will not be too burdensome upon the persons to be directly benefited."

The same conclusion was reached in *State v. Butler County,* 77 Kan. 527, 94 Pac. 1004, as to delegating legislative power to petitioners for the erection of a courthouse and jail, for the reason that a supervisory body had to exercise discretion before it became effective.

In another road case, *State, ex rel., v. Raub,* 106 Kan. 196, 186 Pac. 989, the court said:

"The statute does provide that petitioners may initiate proceedings to obtain a road, but whether or not the request shall be granted and the road petitioned for shall be improved is not for the determination of the petitioners. That discretion and power is lodged in the local legislative tribunal, the board of county commissioners." (p. 199.)

In *State, ex rel., v. Drainage District,* 123 Kan. 191, 254 Pac. 372, a drainage-district case, the whole subject of delegating legislative power is fully treated and the distinctions between the different cases carefully made, concluding that the drainage law did not delegate legislative power to the petitioners.

The case of *Railroad Co. v. Abilene,* 78 Kan. 820, 98 Pac. 224, a street-sprinkling case, is cited by both parties on the constitutional question and other matters involved in this case, and because it so plainly announces the imperative feature of an opportunity to be

heard before some tribunal before a special assessment can be enforced, and where such opportunity is not excluded it may be implied, the following paragraphs of the syllabus are particularly pertinent:

"The fundamental fact upon which the validity of special assessments rests is an increment of benefit to the property taxed resulting from the improvement, and the property owner must, at some stage of the proceedings, have notice and opportunity to be heard, or the equivalent of such notice and opportunity, before a special assessment can become a valid charge against him.

"The legislature may lawfully prescribe the rule by which the benefits accruing to real estate from a local improvement shall be apportioned. Should it do so the theory of the law is that the property owner has been given the equivalent of notice and a hearing upon that subject by representation in the legislature.

"When one or more essential features of a special-assessment proceeding are committed to some tribunal or body inferior to the legislature, notice and an opportunity to contest them must be allowed.

"It is not necessarily fatal to a special-assessment statute that it does not contain an express provision relating to notice and a hearing. When the terms of the statute permit, such a provision may be implied." (Syl. ¶¶ 2, 3, 4, 5.)

But the appellants say if the act did attempt to leave the discretion in the city government, it could not exercise it because it had no jurisdiction over the property later to be assessed, that such discretion should have been exercised by the board of county commissioners. The particular discretion to be exercised was, under the law, whether the extension of the water main would be a benefit to the city. No other body could properly determine that question except the representatives of the city. Even then it was not imperative that the request be granted, but if a benefit to the city it may be granted. There are many matters that might be considered as to its being a benefit to the city. It might afford better fire protection to the neighboring buildings and thus indirectly protect the buildings within the city limits. If the city were short of water supply or had only a limited equipment, it might not be a benefit to the city. The city authorities only could determine these matters. Besides, if a larger pipe than six inches was thought to be economical on account of prospective future development in that direction, none but the city authorities could incur that expense. The entire transaction was to be with the city. The petitioners proposed something as a contract. The city alone could accept it or reject it. The city

is a subordinate legislative body with power to legislate by enactment and publication of ordinances. The levy of the tax is different, and the statute in harmony with the tax-collecting system of the state properly provided in section 3 that—

". . . the board of county commissioners shall levy and pay over to the city annual special assessments against all property included in said district petitioning for said water service sufficient to pay the annual interest and to retire said bonds on maturity of the same, in the same manner and to the same extent as special assessments for street paving are now levied in said cities."

The city could not levy or assess taxes outside of its own territory, but the county board, a coördinate government, could properly do so for the city, when informed by the city of the amount and the property involved. It is argued and shown by the evidence that the county board actually took no action in the matter of making the levy. This is not entirely new with boards of county commissioners. They were perhaps not advised that such was their duty. The county clerk is the official clerk of the board. He performs their clerical and ministerial duties without the formal order which they should have made when the proposed levy and assessment reached their office and came into the hands of their clerk.

Our attention is directed to R. S. 14-411, being section 43, chapter 100, Laws of 1872, directing that all taxes and assessments shall be certified to the county clerk and be placed on the tax roll by him, but there is no good reason why this statute might not be read and considered in connection with the special rule prescribed by chapter 120 of the Laws of 1925.

R. S. 79-2503 provides that—

"No irregularity in the assessment roll nor omission from the same, nor mere irregularities of any kind in any of the proceedings, shall invalidate any such proceeding or the title conveyed by the tax deed; nor shall any failure of any officer or officers to perform the duties assigned him or them upon the day specified work an invalidation of any such proceedings or of said deed."

It was held in *Doty v. Maddux,* 82 Kan. 416, 108 Pac. 854, with reference to irregularities of public officers in regard to matters of taxation:

"The public must not be deprived of its revenue or the citizen escape his fair share of the public burden through such irregularities or omissions. . . . The failure of the county clerk to make the proper entries upon the roll at the proper time were irregularities. It was also an irregularity for the treasurer to make such entries. But these irregularities will not relieve the plaintiff

from paying his taxes. The evidence was sufficient *prima facie* to show that the assessment had been made and had been duly certified to the county clerk, and that it should have been entered on the tax roll and collected. The fact that the entry was made by the treasurer instead of the clerk could not prejudice the plaintiff." (p. 419.)

Appellant complains that while the requirement of the statute is that the petition shall be a contract, the petition in this case is insufficient as a contract to bind the parties thereto, in that it entirely fails to describe the land to be made liable for the cost of the construction of the water main, that it does not set forth the conditions of payment, whether by front footage, by area or by value. This argument is fully answered by reference to the statute, which makes no such requirements. A contract may be valid and binding which omits many details. The statute says the petition shall be in the form of a contract prescribing the place where such water main is to be located and stipulating and agreeing that the cost of laying and constructing it shall be taxed against the properties affected. The petition contained all these required features, and the size of the pipe, which is to be not less than four nor more than six inches in diameter. Appellants say that if it was a contract it was breached by the city in that a part of the line was constructed with two-inch pipe. As far as the record shows, the court did not make findings, but it appears from the volume of testimony in the abstract and counter abstract that a committee of property owners, and particularly those on the west or far end of the line, appeared before the city commission and requested that the size of the main be reduced to two inches and that the plaintiffs knew of this change and made no protest. Even if there may have been some protests, there was ample evidence of the request for the change to sustain a necessary finding by the trial court of justification on the part of the city officers in reducing the size of the pipe without any breach of the contract.

Appellants insist that a definitely outlined district was necessary before any tax levy or assessment could be made or obligation created by the petitioners. The conclusive answer to that argument is that the act does not so require, but in addition to the location of the proposed water main it does state that the levy and special assessment and other matters along that line shall be made "in the same manner and to the same extent as special assessments for street paving are now levied in said cities." If there is any doubt as to the process or methods of procedure, this reference to the laws and

rules prescribed as to assessments for street paving will readily furnish the proper course.

Appellants complain of the appraisement as first made, which includes thirty-five acres of one of the appellants and twelve acres of another, but the record shows that amended ordinances were passed and published to correct these mistakes and reduce the land included to that within 300 feet of the frontage line. It is further contended that part of it should have been according to the alternative rule by being extended to the middle of the block. Most of the land involved in this assessment was not platted, and some that was platted extended back a greater distance than 300 feet. It might be that some of the property should have been taken to the middle of the block instead of the uniform distance of 300 feet, but appellants have not pointed out to us just where that should have been done or how it would affect the appellants herein. The appellant owning land on the south side at the extreme west end complains of the unequal assessment in that the pipe line ends in front of his house on a lot with a 400-foot frontage, his house being only 30 feet from the east side of the lot, and thus leaving 370 feet on the west side of his tract included in the assessment district but without water facilities. This is an evident inequality, but not such as to justify a court of equity in setting aside and enjoining a levy and assessment for an extension of a water main nearly a mile in length.

A careful reading of the evidence convinces us that this very greatly desired facility, like most other worth-while acquisitions, cost much more than was anticipated and thus led to general dissatisfaction. Neither on the law nor the evidence do we think the trial court could have done otherwise than to have denied the injunction.

The judgment is affirmed.

HARVEY, J., dissenting.

JOCHEMS, J. (dissenting in part, concurring in part): I dissent as to the conclusion reached that chapter 120 of the Laws of 1925 is constitutional.

This act has defects similar in many respects to those held unconstitutional in the cases of *Comm'rs of Wyandotte Co. v. Abbott,* 52 Kan. 148, 34 Pac. 416, and *Railroad Co. v. Abilene,* 78 Kan. 820, 98 Pac. 224. In the act now before the court no tribunal is provided to determine if the improvement is necessary and shall be made. A majority of the property owners in a district sign a petition.

They pass this in to the governing body of the city. No method is provided whereby the minority can file a protest or have a hearing upon the necessity or advisability of extending the water main. The governing body of the city is not a proper tribunal to represent people residing outside its limits. Granting that the legislature might so authorize it, in this instance the statute does not in any manner provide that the governing body represents the minority owners in the district. The act does not attempt to authorize the city officials to determine whether the making of the improvement is necessary to the welfare of the people residing in the district to which the main is to be extended or whether it is to their best interests or advantage. It merely provides that the city officials shall determine whether it is to the best interests of the city. It might be highly advantageous to the city but of no benefit to the minority owner.

Then, too, the law makes the petition a contract which "shall pass with the property and be binding upon the heirs and assigns of owners of property affected." Clearly it delegates to a majority of the owners in a district the power to make a contract running with the land under which the lands of a minority owner might be sold for taxes. This is done without providing any proper tribunal to determine the necessity or advisability of the improvement and without providing any hearing or right of remonstrance for the minority. The statute under consideration is a badly bungled piece of legislation. In my judgment it violates section 1 of article 2 of the Kansas constitution.

However, I concur in the result. The plaintiffs are not entitled to an injunction in view of the state of the record. They did not act promptly. They permitted the city to dig the trench and lay the main. They stood idly by when they should have snapped into action. The situation called for quick, prompt action. Now, since the city has incurred the expense and built the improvement, plaintiffs are too late to invoke the strong arm of equity to relieve them from the special assessments. This conclusion is based on *Sleeper v. Bullen,* 6 Kan. 300; *Ritchie v. South Topeka,* 38 Kan. 368, 16 Pac. 332; *Stewart v. Comm'rs of Wyandotte Co.,* 45 Kan. 708, 26 Pac. 683; *Railroad Co. v. Leavenworth County,* 89 Kan. 72, 130 Pac. 855; *Freeman v. Scherer,* 97 Kan. 184, 154 Pac. 1019.

In view of the foregoing authorities, the conduct of the plaintiffs in this case was such as to create an estoppel against the remedy they are now seeking, and the judgment should be affirmed.